## Hodge v. Middletown Hosp. Ass'n
*[Cite as 8 AOA 694]*

*Case No. CA89-09-120*
*Butler County, (12th)*
*Decided December 17, 1990*

*Nicholas E. Bunch, White, Getgey & Meyer, The Adam Riddle House, 2021 Auburn Avenue, Cincinnati, Ohio 45219, for Plaintiffs/Appellants/Cross-Appellees.*

*James H. Scheper, Baden, Jones & Scheper, 222 High Street, Suite 300, Hamilton, Ohio*

45011, for Defendant/Appellee/Cross-Appellant, First National Bank of Southwestern Ohio as Executor of the Estate of Joseph G. Peil, M.D., Deceased.

John A. Goldberg, Lindhorst & Dreidame, 1700 Central Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202-4187, for defendants, Middletown Hospital Association and Karen Lawson.

KOEHLER, J.

This is an appeal from an order rendered August 10, 1989 by the Butler County Court of Common Pleas which denied motions for judgment notwithstanding the verdict and/or new trial, and granted and denied respective motions for remittitur by defendants in a negligence and medical malpractice action.

Plaintiff/appellant/cross-appellee, Levi Hodge, initiated a negligence action against technician Karen Lawson and the Middletown Regional Hospital, and a medical malpractice action against the First National Bank of Southwestern Ohio as executor of the estate of Joseph Peil, M.D., deceased ("Peil"). In his complaint, Hodge alleged he suffered injuries which arose out of the negligent administration of a dye used in conducting a CT scan while he was a patient at the hospital. Hodge based his claim upon the theory that the defendant parties knew or should have known of his sensitivity to the dye, which upon intravenous introduction had caused him to suffer an anaphylactic shock reaction.

Trial commenced in March 1989, during which the parties presented evidence on the question of whether the defendants had breached a duty of care to Hodge in administering the dye. At the conclusion of the evidence, the court submitted special interrogaries to the jury, which returned a general verdict of negligence and set damages at $180,000. Applying R.C. 2315.19, the comparative negligence statute, the jury concluded that Hodge was twenty-nine percent at fault, with Lawson being forty percent negligent, and Peil thirty-one percent negligent. Reducing the total award by twenty-nine percent, the trial court entered judgment against Lawson and the hospital (under the principle of respondeat superior) in the amount of $72,000, and against Peil in the amount of $55,800.

Peil then sought a remittitur of the damage award on the ground that R.C. 2305.27 permits a reduction of a damage award where the plaintiff has received collateral recovery. The trial court granted this motion based upon its belief that Hodge's receipt of $58,244.32 in Medicare Part A benefits constituted collateral recovery which would reduce the amount of damages owed by Peil. While the decision by the trial court granted the motion to reduce damages, the court denied motions for judgment notwithstanding the verdict and/or for new trial, which motions had been based upon Peil's assertion that the jury's verdict was in error. Hodge has timely appealed from the judgment granting Peil's motion for remittitur and assigns the following as error:

"Assignment of Error No. 1.

"The trial court erred in granting defendant-appellant [sic] Peil's motion for remittitur."

"Assignment of Error No. 2.

"The trial court erred in determining that appellant was entitled to no recovery against defendant-appellee. (Order dated August 10, 1989)"

"Assignment of Error No. 3.

"The trial court erred in holding that R.C. Section 2305.27 is constitutional."

Peil has filed a cross-appeal in this matter, asserting that his motion for judgment notwithstanding the verdict and/or for new trial was improperly denied.[1] The cross-appeal raises one assignment of error:

"The trial court abused its discretion in failing to grant appellee/cross-appellant judgment notwithstanding the verdict pursuant to Civ. R. 50(B) or a new trial."

I.

A.

Hodge first asserts that the trial court erred in determining that R.C. 2305.27 requires reduction of his medical malpractice damage award by the amount he recovered under Medicare Part A. Hodge received $58,244.32 from Medicare for his injuries, which the trial court subtracted from the portion of the total damage award which was assessed against Peil's estate. As a result, the estate was not liable to Hodge for any damage, since Peil's share of liability amounted to $55,800.

R.C. 2305.27 reads, in part:

"*** an award of damages shall not be reduced by insurance proceeds or payments or other benefits paid under any insurance policy or contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both, or by direct payments from his employer, *but shall be reduced by any other collateral recovery* for medical and hospital care, custodial care or rehabilitation services, and loss of earned income. Unless otherwise expressly provided by statute, a collateral source of indemnity shall not be subrogated to the claimant against a physician, podiatrist, or hospital." (Emphasis added.)

Hodge contends that Medicare Part A constitutes "insurance proceeds or payments" made under a policy or contract where the premium was paid by himself. Therefore, he asserts that his malpractice damage recovery should not have been reduced. In granting Peil's motion for remittitur, the trial court determined that Medicare Part A did not constitute an insurance policy or contract as contemplated by R.C. 2305.27, but rather was "other collateral recovery. The court thus concluded that the total award received by Hodge must be reduced by the amount recovered from Medicare.

We agree with the trial court that Medicare Part A must be considered collateral recovery rather than an insurance policy under this statute. It would appear the legislative intent behind the enactment of R.C. 2305.27 was to distinguish between an insurance policy under which premiums are paid by an employee or employer, and a government-sponsored program under which a mandatory payroll tax is assessed to all employed individuals. The purpose of the statute -- to address a perceived medical malpractice crisis, *Holaday v. Bethesda Hosp.* (1986), 29 Ohio App. 3d 347, 348--would appear to be furthered by a reading of the statute which permits damage reduction in all but a narrow category of medical care reimbursements.

We find support for our view from several persuasive cases which have distinguished Medicare from "insurance programs" as that phrase is ordinarily recognized. See *Wojtkowski v. Hartford Accident and Indemnity Co.* (1976), 27 Ariz. App. 497, 556 P.2d 798; *Witherspoon v. St. Paul Fire and Marine Ins. Co.* (1976), 86 Wash. 2d 641, 548 P.2d 302;

*Imvris v. Michigan Millers Mut. Ins. Co.* (1972), 39 Mich. App. 406, 498 N.W.2d 36. Medicare Part A is described as follows:

"[An] insurance program ... [which] provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care ... for (1) individuals who are age 65 or over and are eligible for retirement benefits under title II of this Act [42 USCS §§401 et seq.] (or would be eligible for such benefits if certain Federal employment were covered employment under such title) or under the railroad retirement system, (2) individuals under age 65 who have been entitled for not less than 24 months to benefits under title II of this Act [42 USCS §§ 401 et seq.] (or would have been so entitled to such benefits if certain Federal employment were covered employment under such title) or under the railroad retirement system on the basis of a disability, and (3) certain individuals who do not meet the conditions specified in either clause (1) or (2) but who are medically determined to have end stage renal disease." Section 1395C, Title 42, U.S. Code.

Medicare Part A "is a program of hospital insurance. It has a trust fund, the source of which is taxes paid by the employees, employers and self-employed persons." *Martinez v. Richardson* (10th Cir. 1973), 472 F.2d 1121, 1123.

In addressing the question whether Part A benefits could be classified as "insurance," the Washington Supreme Court has concluded that Medicare Part A benefits are "in the nature of disbursements made in furtherance of the social welfare objectives of the Federal government."

"*** The essence of insurance, as that term is commonly understood, is 'a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.' Part A Medicare, therefore, is not 'insurance.' Part A benefits (hospitalization) are not obtained by beneficiaries who voluntarily enter into a contract with the federal government. Part A benefits are paid as a result of mandatory payroll of self-employment taxes to those persons 65 and over who meet the conditions for Social Security benefits. Thus it has been administratively determined that amounts paid as self-employment taxes under Int. Rev. Code §1401(b) and as employee taxes under Int. Rev. Code § 3101(b) (taxes used to finance Part A), do not

qualify as amounts paid for insurance for purposes of the medical expense deduction under Int. Rev. Code §213. Rev.Rul. 216, 1966-2 Cum.Bull. 100." (Citations omitted.) *Witherspoon, supra*, at __, 548 P.2d at 305.

We find this reasoning compelling. In addition, we note that although two Ohio cases have found that similar government "insurance" programs provide benefits which reduce a medical malpractice damage award under R.C. 2305.27, *Holaday, supra*, (Medicaid); *Barcus v. Hutchinson* (June 30, 1981), Franklin App. No. 80 AP-553, unreported (worker's compensation), the issue of whether Medicare Part A benefits constitute collateral recovery is apparently a case of the first impression in Ohio. Our review of the trial court's analysis of this question leads us to conclude that the order below granting the motion for remittitur was appropriate. We thus overrule Hodge's first assignment of error.

### B.

Hodge's second assignment of error asserts that under the principle of joint and several liability, Peil is liable to Hodge for additional amounts even if the trial court's application of R.C. 2305.27 was correct. Peil counters that the issue of joint and several liability is not properly before this court. We are inclined to agree with Peil.

R.C. 2307.31(A) provides, in part:

"*** if two or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than his proportionate share of the common liability, and his total recovery is limited to the amount paid by him in excess of his proportionate share. No tortfeasor is compelled to make contribution beyond his own proportionate share of the common liability."

Operation of the statute has been described by this court as follows:

"In the classic sense, a cause of action for contribution exists when a defendant has paid more than his or her proportionate share of damages to an injured plaintiff. Such defendant may then sue other defendants also responsible for the plaintiff's injury to recover any damages paid which exceed his or her proportionate percentage of liability. The cause of action for contribution is therefore an action which is not a part of the original claim or tort, but an adjustment between defendants separate from the plaintiff's claim arising from the principles of equity and natural justice." (Citations omitted.) *Couch v. Thomas* (1985), 26 Ohio App. 3d 55, 57. Thus, the question of joint and several liability arises where one defendant seeks contribution from another because he has paid more than his proportionate share of liability. *Id.* An action for contribution is separate from the original cause and arises between tortfeasors, not between plaintiff and tortfeasor. *Id.*

In the instant matter, Hodge seeks a reversal of the judgment below based upon his assertion that application of R.C. 2307.31 renders Peil liable to Hodge for additional damages beyond those already paid as Medicare Part A benefits. *Couch* indicates, however, that if Peil were liable for additional amounts, it would be a liability based upon a co-defendant's right of contribution in a cause of action between co-defendants. As the issue of joint and several liability is neither raised by the proper party nor ripe for our review, we overrule Hodge's second assignment of error.

### C.

Hodge's third assignment of error charges that R.C. 2305.27 is unconstitutional, and thus was improperly used to reduce his medical malpractice award. Hodge argues unconstitutionality on several different bases: equal protection, trial by jury, right to open court and right to a remedy, and due process. We find that none of these grounds gives sound support to Hodge's assignment of error and conclude that R.C. 2305.27 is constitutional.

We first note that R.C. 2305.27 creates a statutory distinction between prevailing medical malpractice plaintiffs who receive partial recovery from insurance companies supported by their own or their employer's premium payments, and those medical malpractice plaintiffs who receive benefits from a collateral source. However, this does not mean that equal protection interests have been violated. "A statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions if it bears a rational relationship to a legitimate governmental

interest. " *Menefee v. Queen City Metro* (1990), 49 Ohio St. 3d 27, 29.

We first conclude that R.C. 2305.27 was formulated to address a legitimate governmental interest. This statute, and others addressing medical malpractice litigation, were part of legislation which was "comprehensive in nature and consisted of a response to what was largely perceived throughout the country to be a medical malpractice 'crisis' manifested by sharply increased medical malpractice insurance premiums, cancellation of policies and physician work slowdowns or stoppages." *Vance v. St. Vincent Hospital* (1980), 64 Ohio St. 2d 36, 40. The legislature took action due to a perception that the medical malpractice "crisis" was in danger of jeopardizing the availability of health care services across the state. *Mominee v. Scherbarth* (1986), 28 Ohio St. 3d 270, 274. Thus, R.C. 2305.27, as part of the legislation package designed to curb medical malpractice recovery amounts, was designed to serve a legitimate state interest.

Our analysis next focuses upon whether R.C. 2305.27 is rationally related to that interest. We find that it is. By limiting recovery amounts in medical malpractice awards, the statute serves to reduce insurance premiums and stabilize the risks to physicians. *Id.* at 275. Because we find that R.C. 2305.27 bears a rational relationship to a legitimate state interest, we hold that the statute does not violate the Equal Protection Clauses of the Ohio or United States Constitutions In so holding, we are in agreement with at least one other Ohio appellate court. See *Holaday, supra,* at 349.

Similarly, Hodge's arguments that the statute impinges upon his right to trial by jury and his rights to open court and to a remedy are unavailing. R.C. 2305.27 merely allows the trial court to reduce amounts awarded by a jury in a medical malpractice action by amounts received by the plaintiff from other sources. If the goal of a medical malpractice award is to make the victim whole, the statute does not interfere with his right to a remedy, since regardless of the source, the plaintiff will be able to recover his loss.

Finally, we determine that R.C. 2305.27 does not violate Hodge's due process protections. "A legislative enactment will be deemed valid on due process grounds '\*\*\* (1)

if it bears a real and substantial relation to the public and (2) if it is not unreasonable or arbitrary.'" *Mominee, supra,* citing *Benjamin v. Columbus* (1957), 161 Ohio St. 103, paragraph five of the syllabus. This analysis is sufficiently similar to that utilized in addressing equal protection questions that we similarly conclude that the statute at issue herein did not violate any due process protection afforded Hodge under the Ohio Constitution.

We therefore reject Hodge's arguments that R.C. 2305.27 violated his constitutional rights in denying him additional recovery from Peil for the amounts he had received through Medicare Part A. Because we reject Hodge's assignments of error, we affirm the decision of the trial court which granted Peil's motion for remittitur.

II.

Peil has filed a cross-appeal in this matter wherein he argues the trial court abused its discretion in denying his April 1989 post-trial written motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Peil's cross-appeal focuses upon his assertion that the jury's response to interrogatory number three precludes a general verdict of liability on the part of Peil since an intervening act of Hodge broke the chain of proximate cause, thereby absolving Peil of negligence.

Hodge counters that Peil waived his right to complain of any inconsistency in the jury's answers to the interrogatories by failing to object prior to the discharge of the jury. For authority, Hodge cites *Haehnlein v. Henry* (1987), 41 Ohio App. 3d 233, 234, in which the Court of Appeals for Summit County held that an objection to inconsistent answers to jury interrogatories is waived unless the objection is raised before the jury is discharged. *Haehnlein* reasoned that "the purpose of the rule is to promote the efficiency of trials by permitting the reconciliation of inconsistencies without the need for a new presentation of the evidence to a different trier." *Id.* The court then noted that "any other decision would encourage jury shopping by litigants, who might preclude resubmission of the verdict merely by waiting to object until after the original jury is discharged." *Id.*

We find this holding to be persuasive. However, a review of the trial transcript discloses that since Peil's counsel only or-

dered preparation of a partial transcript which excluded the trial court's instruction to the jury and the jury's announcement of the verdict, there is no indication in the record that Peil's counsel either objected or failed to object to the perceived inconsistencies.

Nevertheless, we hold that the absence of such indication in the record does not prevent our holding that Peil waived his right to object to the alleged inconsistent verdict. See *Farmers Production Credit Assn. of Ashland v. Stoll* (1987), 37 Ohio App. 3d 76, 77 (where pertinent portions of the transcript are omitted on appeal, the court must presume the validity of the lower court's proceedings). We believe *Haehnlein* places the burden upon the party moving for judgment notwithstanding the verdict to demonstrate that an objection to alleged verdict inconsistencies was made at trial. Otherwise, a potential injustice arises where, as here, the party objecting to the interrogatories has ordered only a partial transcript of proceedings, omitting the portion of the transcript in which the jury's verdict is announced. Since under *Haehnlein* the obligation to object to interrogatory answers at trial falls upon the party seeking a judgment notwithstanding the verdict, the burden to show that such objection was made must also fall upon that party. As additional support for our finding of waiver, we note that Peil's reply brief, in which he addresses Hodge's arguments in the response to the cross-appeal, never asserts that objection to the alleged inconsistencies occurred at trial nor acknowledges Hodge's waiver argument in any manner.

Because we find that Peil waived his opportunity to object to the jury's interrogatory answers, we conclude the trial court did not err in failing to grant Peil's motion for judgment notwithstanding the verdict. We therefore reject Peil's cross-appeal and affirm the decision of the trial court on this question.

### III.

Based upon these considerations, we conclude that the trial court's August 10, 1989 order correctly applies R.C. 2305.27 in reducing Hodge's damage award. Moreover, the trial court properly upheld the jury verdict. We thus affirm the decision of the trial court.

JONES, P.J., and YOUNG, J., concur.

[1] Defendants Lawson and the hospital have not entered an appearance in this matter and are not parties to this appeal.