556 P.2d 798

Frank J. WOJTKOWSKI, a widower,
Appellant,

v.

HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a Foreign Corpo-
ration, Appellee.

No. 2 CA–CIV 2173.

Court of Appeals of Arizona,
Division 2.

Oct. 29, 1976.

Paul F. Scartezina, Tucson, for appel-
lant.

Mesch, Marquez & Rothschild, P. C. by
Alfred C. Marquez, Tucson, for appellee.

### OPINION

HOWARD, Chief Judge.

This is an appeal from a summary judg-
ment. Appellant, injured, in an automobile
accident incurred certain medical expenses
for which he sought reimbursement under
the "medical pay" provisions of the policy
issued to him by appellee. Since appellant
had received Medicare payments relative to
his expenses, appellee refused to pay him
on the basis of the following exclusion
contained in its policy:

"This policy does not apply . . .

Under coverage B—Medical Expenses,
to that amount of any medical expense
which is paid to or on behalf of the in-
jured person under the provisions of any
(1) premises insurance affording bene-
fits for medical expenses, (2) *individual,
blanket or group accidents, disability or
hospitalization insurance,* (3) medical,
surgical, hospital or funeral service, ben-
efit or reimbursement plan or (4) work-
mens' compensation or disability benefits
law or any similar law." (Emphasis
added)

The issue to be decided is whether the ex-
clusion is ambiguous.

It is important to note the significant
differences between Part A Medicare, 42

U.S.C.A., Sec. 1395c—Sec. 1395i–1, and Part B Medicare which is provided in 42 U.S.C.A. Sec. 1395j et seq.:

"[T]he Medicare program is a dual structure comprising two separate insurance programs, distinct as to benefits, coverage, financing, and administration. Part A, hospital and related benefits, is incorporated within the existing social security patterns. Contributions are universal and mandatory. After a transitional period . . . eligibility will be a right only for persons 65 and over who meet the conditions required for cash social security benefits.

Part B, the supplementary medical benefits plan, is voluntary and open to any person aged 65 or over (except nonresident aliens) irrespective of social security status. Premiums are paid on a current basis. Benefit payments under the two plans are made by different administrative 'intermediaries' (called 'carriers' under Part B)." H. Somers & A. Somers Medicare and the Hospitals—Issues and Prospects 19–20 (1967), quoted in *Witherspoon v. St. Paul Fire & Marine Insurance Company*, 86 Wash.2d 641, 548 P.2d 302, 305 (1976).

A.R.S. Sec. 20–103 provides, " 'Insurance' is a *contract* whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." In *Witherspoon v. St. Paul Fire & Marine Insurance Company*, supra, the court states:

"Part A benefits are paid as a result of mandatory payroll or self-employment taxes to those persons 65 and over who meet the conditions for Social Security benefits. Thus it has been administratively determine that amounts paid as self-employment taxes under Int.Rev. Code § 1401(b) and as employee taxes under Int.Rev.Code § 3101(b) (taxes used to finance Part A), do not qualify as amounts paid for insurance for purposes of the medical expense deduction under Int.Rev.Code § 213. Rev.Rul. 216, 1966–2

Cum.Bull. 100. In addition, Rev.Rul. 341, 1970–2 Cum.Bull. 31, characterizes Part A Medicare in this manner:

[T]he basic medicare benefits [Part A] paid to (or on behalf of) an individual are in the nature of disbursements made in furtherance of the social welfare objectives of the Federal government."

It is clear that Part A Medicare coverage is not "insurance" since benefits are not obtained by beneficiaries who voluntarily enter into a *contract* with the federal government. *Witherspoon v. St. Paul Fire & Marine Insurance Co.,* supra. The Court in *Witherspoon* does hold, however, that Part B Medicare coverage is "group insurance":

". . . Part B Medicare would clearly fall within the category of 'group' insurance rather than 'individual' or 'family' insurance. For a current uniform monthly payment of $6.70 (Medical Services Adm'n, U.S. Dep't of H.E.W. Pub. No. 75–24902 *Medicaid—Medicare, Which is Which?* 18 1975) ), each enrollee receives exactly the same medical insurance benefits. 42 U.S.C. §§ 1395j–1395m (1970). Thus, Part B Medicare is 'group' insurance, . . ." 548 P.2d at 307.

In two jurisdictions the courts have held the same or similar exclusion to be ambiguous and not embracing any Medicare payments without distinguishing between payments under Part A or Part B coverage. In the case of *Imvris v. Michigan Millers Mutual Insurance Company,* 39 Mich.App. 406, 198 N.W.2d 36 (1972), the court affirmed the memorandum decision of the trial court which relied upon *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed. 2d 1435 (1960), which characterized the social security system as a form of social insurance enacted pursuant to Congress' power to spend money to aid the general welfare. The *Imvris* court then approved the following statement of the trial court:

" 'Clearly the language of the contract providing for exclusions for accident

disability and hospitalization insurance did not contemplate Medicare payments. Medicare is social welfare legislation passed by the Congress to aid the general health and welfare of those over 65 years of age. Although classified as social insurance, it is clearly not an insurance program within the ordinary meaning of the term insurance and within the meaning of the exclusions contained within the policy in question.'" 198 N. W.2d at 38.

In *Jones v. Aetna Casualty & Surety Company*, 497 S.W.2d 809 (Mo.App.1973), the court relied on *Imvris,* supra, and further stated:

"Buttressing the basic concept of the *Imvris* court that Medicare provisions are social insurance as distinguished from contractual insurance are certain Congressional enunciations of the purpose of Medicare, first enacted in 1965. 42 U.S.C.A. Sec. 1395b provides that there shall be no prohibition of a state providing, or any individual from purchasing or otherwise securing protection against the cost of any health service. Medicare is expressly made inapplicable to 42 U.S.C.A. §§ 2651–2653, which permits the United States to recover from a tort feasor for medical expenses which it was obliged to provide the injured party, leading to the conclusion that if the government considered itself to be an insurer, it would have retained the right afforded by the statute rather than having excluded Medicare. See *Carey v. Finch,* 316 F.Supp. 1263 (D.C.La.1970), although holding that an 81-year old woman did not qualify for emergency services in a non-participating hospital under the facts, noted, 316 F.Supp. 1267, [3, 4], 'As remedial social welfare legislation, "the Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life."' See also *Sowell v. Richardson,* 319 F.Supp. 689 (D.C.S.C.1970) to the same effect; and note the unanimous opinion in *Philpott et al. v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), holding that the New Jersey welfare agency was barred from recovery of advance payments of monthly disability assistance to recipient in view of 42 U.S.C.A. § 407, providing against transferability or assignability, etc., of future disability insurance benefits because of the Supremacy Clause. Note also the extensive discussions of Health Care in 35 Law and Contemporary Problems, pp. 667 et seq., as to alternatives to the present provisions of Medicare. 'Current discussions of national health insurance are based, first, on a commitment that medical care should be available to everybody, and, second, on a belief that the costs of medical care should be met through group payment. The commitment to availability reflects a *basic social policy* stemming from widespread belief that no one in modern society·should suffer because medical care is not available when and where it is needed.' (Page 669, italics added.); and the article, 'The Law and Poor People's Access to Health Care,' Norman L. Cantor, Page 901, et seq., of the same publication." 497 S.W.2d at 809.

We note that in *Hartford Accident and Indemnity Company v. Chiate,* 13 Ariz. App. 321, 476 P.2d 527 (1970), the court held that "medical expense" coverage is not required by our Financial Responsibility Laws and that the exclusionary clause of the insurance policy, which employed language similar to the policy language here, applied to Medicare payments. However, the court made it clear that there was never any contention that the Medicare payments were not within the terms of the exclusionary clause.

█ We hold that payments from Part A coverage are not within the terms of the exclusion, whereas payments under Part B coverage constitute "group insurance" within the exclusionary provisions of the policy.

Since the record does not disclose whether the payments here were under Part A or Part B coverage, summary judgment was improper.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

KRUCKER and HATHAWAY, JJ., concur.