785 P.2d 59

**STATE of Arizona, Appellee,**

v.

**Ian Dale MacGILLIVRAY, Appellant.**

**No. 1 CA–CR 88–261.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 31, 1989.

Review Denied Jan. 23, 1990.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., and Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

Allen, Kimerer & LaVelle by Michael D. Kimerer and Pamela J. Franks and Marvin Johnson, P.C. by Marvin Johnson, Phoenix, for appellant.

LEVI RAY HAIRE, Judge, Retired.

After a jury trial, appellant Ian Dale MacGillivray (defendant) was convicted on the following charges:

Count I, fraudulent schemes and artifices, A.R.S. § 13–2310;

Counts II through XI, submitting fraudulent insurance claims, A.R.S. § 44–1220; and

Count XII, Theft, A.R.S. § 13–1802.

On Count I, the fraudulent schemes charge, he was sentenced to a minimum term of 5.25 years imprisonment. On each of Counts II through XI, involving the submission of false insurance claims, he was sentenced to a minimum term of one year. On Count XII, the theft charge, he was sentenced to five years, the minimum term for the charge as enhanced by one prior conviction pursuant to A.R.S. § 13–604(H). All sentences were to be served concurrently.

The factual context presented by the charges arose out of a scheme entered into between defendant and an acupuncturist. The defendant, an osteopathic physician, was treating patients eligible for Medicare benefits. He met an individual named Douglas Schramm who suggested a scheme whereby Schramm would provide acupuncture treatments to patients. Acupuncture treatments are not eligible for reimbursement under Medicare, Part B. Under the scheme devised by defendant and the acupuncturist, defendant would submit a claim to the Medicare provider for payment for an office visit by the patient, and would bill the acupuncture treatments as various other modalities, such as physical therapy treatments. The overall scheme constituted the basis for the fraudulent schemes and artifices charge in Count I of this proceeding.

Counts II through XI involved the submission by defendant of ten false claims seeking payment for the acupuncture treatments in accordance with the above-described scheme. These ten claims were submitted at the same time by defendant on June 17, 1982, and totalled approximately $1,111.44. The theft charge, Count XII, involved facts occurring 34 days later when the defendant deposited in his bank account three checks that included payment by Medicare for the ten claims submitted on June 17.

As indicated, defendant received an enhanced sentence on the theft count. This

enhancement resulted from the trial judge's ruling pursuant to A.R.S. § 13–604(H) and *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980), that defendant's contemporaneous convictions on Counts II through XI could be used collectively as one prior conviction for enhancement of the sentence on the theft conviction.

The fraudulent claims counts of the indictment against defendant are all based on A.R.S. § 44–1220, and in pertinent part allege that defendant "presented false or fraudulent claims upon a contract of insurance with the United States Department of Health and Human Services, Aetna/Medicare, for payment of a loss...."

A.R.S. § 44–1220 provides:

"A person who presents a false or fraudulent claim or proof in support of such claim, *upon a contract of insurance* for payment of any loss, or who prepares, makes or subscribes to an account, certificate of survey, affidavit or proof of loss, or other book, paper or writing, with intent to present or use it or allow it to be presented or used in support of such claim, is guilty of a class 5 felony." (Emphasis added.)

In a pretrial motion to dismiss the fraudulent claims counts, defendant contended that Counts II through XI should be dismissed because the claims were not submitted "upon a contract of insurance" as specifically required by § 44–1220. Defendant contended that because there was no contractual relationship between Medicare recipients and the Department of Health and Human Services, the false claim could not have been submitted "upon a contract of insurance." The trial court denied defendant's motion and also denied his subsequent motion for directed verdict raising the same issue.

■ On appeal the defendant contends that the trial judge erred in denying his motion to dismiss and motion for directed verdict on the fraudulent claim counts, urging that neither the Social Security Act generally, nor its specific Medicare provisions, can be characterized as creating benefit rights of a contractual nature.

As previously stated, the ten false claims involved in this case were submitted to obtain benefits allegedly due to defendant's patients under the provisions of Medicare. Medicare is a part of the Social Security Act. *See* 42 U.S.C. § 1395 *et seq.* In *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the United States Supreme Court was presented with the question of whether the rights of recipients of old age and survivor's insurance benefits under the Social Security Act were contractual in nature. After discussing in some detail the general functioning of the Act, the court noted that "the Social Security system may be accurately described as a form of social insurance ...," and concluded that the interest of an employee covered by the Act was a "noncontractual interest." To hold otherwise, the court noted, "would deprive [the system] of the flexibility and boldness in adjustment to everchanging conditions which [the system] demands." The court then concluded that:

"It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving to it '[t]he right to alter, amend, or repeal any provision' of the Act. § 1104, 49 Stat. 648, 42 U.S.C. § 1304, 42 U.S.C.A. § 1304. That provision makes express what is implicit in the institutional needs of the program." 363 U.S. at 610–11, 80 ·S.Ct. at 1372–73, 4 L.Ed.2d at 1444.

*See also, Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (characterizing right to receive Social Security benefits as a noncontractual right).

The concept that a statutory clause reserving to a legislative body the right "to alter, amend or repeal" the specified legislation precludes any implication that contractual rights have been legislatively created is not limited to *Flemming v. Nestor.* In *National Railroad Passenger Corporation v. Atchison, Topeka and Santa Fe Railway Company,* 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985), an issue was presented concerning whether certain amendments to the Rail Passenger Service

Act amounted to a breach of a contract alleged to have been created by the passage of the Act. In finding that the Act did not create a contract between the United States and participating railroads, the court's analysis proceeded from the well established presumption "that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" (Quoting *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937)). The court then stated:

> "We simply cannot agree with the railroads that the frequent usage in a statute of the language of contract, including the term 'contract,' evidences an intent to bind the Federal Government contractually. Legislation outlining the terms on which private parties may execute contracts does not on its own constitute a statutory contract, but is instead an articulated policy that, like all policies, is subject to revision or repeal. *Indeed, lest there be any doubt in these cases about Congress' will, Congress 'expressly reserved' its rights to 'repeal, alter, or amend' the Act at any time.* 45 U.S.C. § 541. *This is hardly the language of contract.*" [Footnote omitted]. 470 U.S. at 467, 105 S.Ct. at 1452, 84 L.Ed.2d at 447. (Emphasis added.)

To the same effect, *see In the Sinking Fund Cases*, 9 Otto 700, 99 U.S. 700, 25 L.Ed. 496 (1878).

In analyzing the question of whether the claims involved in this case were submitted upon a contract of insurance, defendant points out that the statutes providing Medicare benefits are part of the Social Security Act, and that the legislative reservation of the right to alter, amend or repeal any provision of the Social Security Act applies equally to the Medicare provisions. He therefore concludes that Medicare recipients do not receive benefits based upon a "contract of insurance," and accordingly that the state has failed to prove any violation of A.R.S. § 44–1220.

The state does not directly respond to defendant's argument that the statutory reservation of the right to alter, amend or repeal negates the mutuality of obligation between the parties that is essential to the existence of a contract of insurance. *See Employers' Liability Assurance Corporation v. Frost*, 48 Ariz. 402, 62 P.2d 320 (1936). Rather, the state contends that the defendant's social security cases are distinguishable from the instant case because those cases involved government entitlement programs requiring no payment or contribution from the beneficiaries. The state's argument appears to be that in the social security cases cited by defendant, no contract could come into existence because no consideration had been paid for the benefits claimed. In that regard we first note that in fact "consideration" in the form of a tax based on earnings is a necessary prerequisite for entitlement to the social security insurance benefits involved in the cases cited. More importantly, however, as we have previously noted, the basis for the holding that the insurance benefits were noncontractual in nature was a reservation by Congress of the right to alter, amend or repeal the Act, and, the state has presented no argument that this reservation is not equally applicable to the Medicare benefits involved in this case.

Again, without in any way attacking the legal soundness of *Flemming*, the state additionally urges that the question of what constitutes a contract is a matter to be determined by the application of state law, and that Arizona has decided that the rights of a Medicare recipient, particularly rights pursuant to Part B of Medicare, are contractual in nature. *See Wojtkowski v. Hartford Accident and Indemnity Company*, 27 Ariz.App. 497, 556 P.2d 798 (1976).

The *Wojtkowski* decision is one of several state court decisions that have struggled with the question of whether Medicare benefits fall within various insurance policy exclusions relating to reimbursable medical expense coverage. The results in these cases have not been entirely consistent, with some decisions holding that expenses covered by Medicare benefits were excluded from policy coverage, and others holding that the expenses were not excluded.

Because *Wojtkowski* cites *Witherspoon v. St. Paul Fire & Marine Insurance Company,* 86 Wash.2d 641, 548 P.2d 302 (1976) in distinguishing between Part A and Part B of Medicare coverage, we discuss that decision before considering in detail the result reached in *Wojtkowski.* In *Witherspoon* the issue was whether medical expenses paid by Medicare fell within a policy exclusion for medical expenses covered by "... any other insurance ..., whether provided on an individual or family basis or on a group basis through an employer, union or membership in an association." The benefits in *Witherspoon* were based on both Part A and Part B Medicare. The *Witherspoon* court noted that there were significant differences in the nature and administration of Parts A and B, stating:

> "[T]he Medicare program is a dual structure comprising two separate insurance programs, distinct as to benefits, coverage, financing, and administration. Part A, hospital and related benefits, is incorporated within the existing social security patterns. Contributions are universal and mandatory. After a transitional period ... eligibility will be a right only for persons 65 and over who meet the conditions required for cash social security benefits.
>
> "Part B, the supplementary medical benefits plan, is voluntary and open to any person aged 65 or over (except nonresident aliens) irrespective of social security status. Premiums are paid on a current basis. Benefit payments under the two plans are made by different administrative 'intermediaries' (called 'carriers' under Part B). H. Somers & A. Somers, *Medicare and the Hospitals— Issues and Prospects* 19–20 (1967); *see* Department of Health, Education & Welfare, Pub. No. SSA 74–10050, *Your Medicare Handbook* 44–45 (1974)." 548 P.2d at 305.

The court then cited a statutory definition of insurance as being "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies," and concluded that because of the nonvoluntary requirement of participation in Part A coverage, Part A benefits were not contractual in nature. As to Part B benefits, the court noted that because of the voluntary nature of participation in Part B coverage, Part B had "a contract aspect not present in Part A." Accordingly, the court noted, it might be argued that Part B Medicare constituted "insurance" in a contractual sense. However, the court in *Witherspoon* did not find it necessary to decide that question, since even if Part B coverage were considered to be "insurance" in a contractual sense, it would constitute "group insurance" that was not excludable, because the exclusion provision only applied if group insurance was provided "through an employer, union or membership in an association."

In *Wojtkowski,* Division 2 of this court was faced with a similar issue. There the policy excluded medical expenses paid under the provisions of any "group ... insurance." The court stated that the issue to be decided was whether the exclusion was ambiguous. Citing *Witherspoon,* the court quickly concluded that because Part A is not insurance obtained by beneficiaries who voluntarily enter into a contract with the federal government, Part A benefits did not fall within the exclusion. The court further concluded that Part B Medicare coverage constituted group insurance within the meaning of the policy's group insurance exclusion.

The basis of the court's holding in *Wojtkowski* is subject to question. The court characterizes *Witherspoon* as holding that Part B Medicare coverage is "group insurance," thereby implying that *Witherspoon* held that Part B Medicare benefits are provided pursuant to a contract of insurance between the recipient and the federal government. As we have previously noted, although *Witherspoon* discussed that issue and stated that Part B Medicare had a contractual aspect (voluntariness) not present in Part A, it did not hold that Part B Medicare recipients had a contract of insurance with the federal government. Rather, the court's holding was that if the coverage was insurance, it was "group"

insurance that did not fall within the *Witherspoon* policy exclusion.

The court in *Wojtkowski* did not expressly hold that Part B Medicare benefits result from a contract of insurance between the recipient and the federal government. Nor was such a holding necessary to sustain the result reached by the court. All that was necessary to sustain the result in *Wojtkowski* was a determination by the court that Part B Medicare was "group insurance" within the meaning of the policy exclusion. Without question, the Part B Medicare program constitutes an insurance program:

> "There is hereby established a *voluntary insurance program* to provide *medical insurance benefits* in accordance with the provisions of this part for aged and disabled individuals who *elect to enroll* under such program, to be financed from premium payments by enrollees together with contributions from funds appropriated by the Federal Government." (Emphasis added.) 42 U.S.C. § 1395j.

Finally, we note that neither the *Witherspoon* court nor the *Wojtkowski* court in discussing the contract issue considered the reasoning of the United States Supreme Court in the decisions previously discussed in this opinion to the effect that the reservation of a legislative right to alter, amend or repeal a legislative act precludes any finding that rights of a contractual nature accrue to beneficiaries of the act. Such a provision precludes a finding of mutuality of agreement, a necessary element of an insurance contract as defined in Arizona case law. *See Employers' Liability, supra.*[1]

For the foregoing reasons we do not find *Wojtkowski* persuasive or controlling on

the question of whether the false claims submitted by defendants in this case were submitted "upon a contract of insurance" as expressly required by A.R.S. § 44–1220.

We emphasize that the Class 5 felony offense set forth in § 44–1220 is not committed unless the false claim is submitted upon a *contract* of insurance. Under this very specific statutory language, the offense does not occur unless the insurance claim is submitted under circumstances involving an insurance arrangement that is contractual in nature.

While A.R.S. § 13–104[2] abolishes the rule of strict construction of penal statutes, we cannot disregard the clear and unambiguous language of the statute requiring that the false claim be submitted "upon a contract of insurance."

In summary on this issue, we hold that defendant's motion to dismiss and motion for directed verdicts on Counts II through XI should have been granted. Accordingly, we need not consider whether the trial court erroneously instructed the jury concerning the elements of these offenses. In view of our holding, there was no prior conviction to serve as a basis for the enhancement of defendant's sentence on Count XII, the theft count.

Likewise, we need not consider defendant's contention that the false claim offenses were committed on the same occasion as the theft offense and therefore could not be used as a prior conviction for enhancement purposes. Additionally, our decision that the false claim counts should have been dismissed makes it unnecessary to consider whether the enhanced sentence on the theft charge violates the eighth amendment's prohibition against cruel and

---

1. We have read and considered several other state court decisions dealing with the issue of whether Medicare benefits are excluded from medical expense coverage under varying policy provisions. *Jones v. Aetna Casualty and Surety Company*, 497 S.W.2d 809 (Mo.App.1973) and *Imvris v. Michigan Millers Mutual Insurance Company*, 39 Mich.App. 406, 198 N.W.2d 36 (1972) support a holding that the Medicare benefit program constitutes a social insurance program that is not contractual in nature. Arguably to the contrary, *see LeBlanc v. State Farm Mutual Auto Insurance*, 410 Mich. 173, 301

N.W.2d 775 (1981). We do not find these decisions particularly persuasive on the precise issue before this court.

2. A.R.S. § 13–104 reads as follows:

"The general rule that a penal statute is to be strictly construed does not apply to this title, but the provisions herein must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in § 13–101."

unusual punishment, or whether the enhancement statute is an unconstitutional infringement on the Arizona Supreme Court's rule-making authority.

■ We now consider defendant's contention that prosecutorial misconduct denied him a fair trial, thereby requiring that the convictions on the fraudulent schemes and artifices count and the theft count also be reversed.

He characterizes several statements made by the prosecutor in the opening and closing arguments as inflammatory, depriving him of a fair trial. He also attempts to characterize one of the prosecutor's comments as a personal expression of the defendant's lack of credibility.

It is beyond dispute that a prosecutor has a duty to avoid improper suggestions, insinuations and assertions of personal knowledge in arguments to the jury. *State v. Salcido,* 140 Ariz. 342, 681 P.2d 925 (App.1984). However, we find it unnecessary to address the "offending" comments identified by the defendant for the simple reason that there was no claim of error raised at trial and the comments, even if erroneous, could not be characterized as "fundamental" error. *See State v. Burton,* 144 Ariz. 248, 697 P.2d 331 (1985) (fundamental error goes to foundation of case or takes from defendant a right essential to his defense.) The failure to object to the arguments at trial, unless fundamentally erroneous, constitute a waiver. *State v. Routhier,* 137 Ariz. 90, 95, 669 P.2d 68, 73 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984).

Although defendant suggests both in his opening and reply brief that he was somehow prevented by the trial court's admonitions from objecting, that suggestion is based on an unsupported characterization of the record. The trial court clearly advised defense counsel, who had a tendency to argue numerous matters at length during trial, to simply state the objections and not argue them in front of the jury. A fair reading of the record supports that conclusion and equally demonstrates the lack of support for the defendant's position on this issue. Finding no fundamental error, we conclude that defendant has waived this issue on appeal.

■ The defendant's convictions on Counts II through XI are vacated and the charges dismissed. Because the sentence on Count XII was wrongfully enhanced, that sentence is set aside. Although the conviction and sentence on the fraudulent schemes and artifices count are valid, we perceive from the trial judge's comments on the record an indication that the sentence imposed on that count might have been influenced by the trial judge's erroneous belief that he was required to impose an enhanced mandatory sentence of imprisonment on the theft count. An appellate court may vacate an admittedly valid sentence and remand for resentencing under such circumstances. *See United States v. Fredenburgh,* 602 F.2d 1143, 1148 (3rd Cir. 1979), *overruled on other grounds* by *United States v. Busic,* 639 F.2d 940, 953 (3rd Cir.1981), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Therefore, we set aside the sentence imposed on the fraudulent schemes and artifices count.

This matter is remanded for resentencing on Counts I and XII.

CONTRERAS, P.J., and EUBANK, J., concur.

*Note:* Retired Judge LEVI RAY HAIRE was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.