No. 70,303

STATE OF KANSAS, *Appellee*, v. MARIO S. FISHER, *Appellant*.

(891 P.2d 1065)

Opinion filed March 10, 1995.

*Garry L. Howard*, of Slape and Howard, Chartered, of Wichita, argued the cause and was on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Mario S. Fisher from his convictions for one count of aggravated kidnapping, six counts of aggravated robbery, six counts of kidnapping, and one count of aggravated battery. He was sentenced to a controlling term of life plus 15 years to life.

Fisher contends the trial court erred in refusing to allow him to withdraw his waiver of a jury trial and to appoint different counsel to represent him. He also contends evidence concerning the Spears Restaurant robbery is insufficient to establish the movement required to prove aggravated kidnapping and kidnapping. Two other errors claimed are that the aggravated kidnapping and aggravated battery convictions are multiplicitous and that the trial court abused its discretion in failing to justify on the record a disparity in sentencing between Fisher and two other persons convicted in the Spears Restaurant robbery.

Fisher's convictions arise out of three robberies. Two of the robberies occurred the same morning (Bib & Rib Restaurant and Kentucky Fried Chicken). In both incidents two individuals wearing nylon stocking masks and armed with handguns entered, took money from cash registers and persons present, locked the victims in walk-in coolers, and left. The victims were unable to identify the defendant as one of the robbers in either robbery.

Three days later, the third incident occurred at Spears Restaurant. As with the first two incidents, two men wearing nylon masks and armed with guns entered the restaurant. They took money from the register as well as a money clip from the owner, Randy Spears, and a wallet from a customer, Gary Howard. One of the robbers then ordered the manager, Laurie Traffas, to open the safe. Spears told the men that he could open it. The safe was a cylinder floor safe. To get into the lower portion of the safe a key was needed. The key to open the safe was in the office. One of the robbers said, "Let's go get it." As Spears stood up to get the key, the robber hit him on the head with the butt of a gun. The force of the blow knocked Spears to his knees, and he began bleeding profusely. Traffas and Spears then walked through the waitress station, down a hallway, and through the kitchen to the office with the robber following them. Once in the office, Traffas

obtained the key. The robber then picked up Traffas' purse, and the three returned to the front of the restaurant. Spears unlocked the safe with the key and placed money from the safe in Traffas' purse. The robbers then asked where the walk-in freezer was, but after they received no response they left.

Wichita police officers had arrived at the scene and were waiting outside the restaurant. They could see through plate glass windows and observe the front of the restaurant. They watched the two robbers run out of Spears Restaurant and enter a white car parked at the front entrance with its headlights on and engine running. After a vehicle chase, the white car hit a pole and came to a stop. Two men exited the car on the passenger side and one exited on the driver's side. All three were taken into custody after a foot chase. The defendant was identified as the driver of the car and the person sitting in the car while the robbery took place. There was one handgun in the front seat of the car and one in the back seat. Additionally, in the back seat was Traffas' purse and the bank bags from the Spears robbery.

Spears and Traffas both identified two individuals as the ones who robbed the restaurant, but they did not identify the defendant as one of the robbers. Howard was unable to identify any individuals, including the defendant, as the robbers.

The defendant gave a confession to the police. He admitted that he committed the Bib and Rib and Kentucky Fried Chicken robberies with Gilbert Thomas; a man named Randy was driving the white car during those robberies. Both the defendant and Thomas were wearing pantyhose masks and displayed weapons, but the defendant did not think his gun was loaded. The defendant's "job" was to tell everyone to get on the floor, and Thomas told everyone to get into the freezer. They split the money taken in the robberies three ways.

The defendant also admitted to the police his involvement in the Spears Restaurant robbery. He initially told the police he asked for a ride from two strangers in a white car. The two men decided to stop for some food, and they went into Spears while the defendant remained in the back seat of the car. Ten minutes later, the men ran out of the store with guns in their hands, and

the driver told the defendant to get into the front seat and drive. The defendant jumped over the split front seat and drove the car away. After the car hit a telephone pole, the men told him to run, and he did. The defendant insisted he did not know either of the men or that a robbery was going to occur. A short time later the defendant changed his story and admitted that he knew the men and that he initially drove to Spears, then moved to the back seat while the two men went inside, and moved back to the front seat to drive away.

The next day the defendant changed his story about the Spears robbery again. He admitted that he was with Andre Jackson and Gilbert Thomas. The three of them stopped at Dillons to buy some gloves and pantyhose. Jackson and Thomas told the defendant to stay in the car and drive around to the front of Spears, which he did while Jackson and Thomas went in with guns. When they came out, the defendant drove off. The defendant admitted that he knew they were planning a robbery, but he denied knowing where the robbery would take place. They intended to split the money from the robbery three ways. The defendant also admitted that he had lied the night before in giving his story.

The defendant gave a different story at trial. He insisted that he was home sleeping on the morning of August 8, 1992, when the Bib and Rib and Kentucky Fried Chicken incidents occurred. He denied being involved in a robbery that day. The defendant's cousins also testified that he was at home during the morning those robberies occurred.

The defendant did admit at trial that he was with Jackson and Thomas on the day of the Spears Restaurant robbery. He testified that he was driving Thomas' girlfriend's car and they were drinking beer and gin. Thomas said he was hungry and told the defendant to pull into Spears. The defendant had no money, so he waited in the car listening to music while Jackson and Thomas went inside. About 10 minutes later they came back acting panicky, and the defendant realized that Thomas had a gun. Thomas told the defendant, "Shut up. Drive, mother-fucker," so the defendant drove away past the police. The defendant testified that at one point during the chase he told Thomas and Jackson he

was going to stop the car and run, but Thomas pointed his gun at the defendant's head so the defendant kept driving. After the car hit a telephone pole, the defendant ran away as he was scared of going to jail because of the high-speed chase. The defendant insisted that there was no mention of a robbery before Jackson and Thomas went into Spears. The defendant testified that he only confessed to the police because he was told that if he confessed he would get to go home or get probation, that if he did not confess they would "hang my ass in court," and that Thomas had already implicated him.

Following a bench trial, the court convicted the defendant of two counts of aggravated robbery and one count of kidnapping in the Bib and Rib incident; two counts of aggravated robbery and four counts of kidnapping in the Kentucky Fried Chicken incident; and two counts of aggravated robbery, one count of kidnapping, one count of aggravated kidnapping, and one count of aggravated battery in the Spears Restaurant incident. The defendant was acquitted of robbing Gary Howard of his wallet in the Spears incident because the charging information was insufficient.

The district court sentenced the defendant to 15 years to life for each of the six aggravated robbery convictions, 15 years to life for each of the six kidnapping convictions, life imprisonment for the aggravated kidnapping conviction, and 3 to 10 years for the aggravated battery conviction. All sentences were imposed concurrently except the life sentence for aggravated kidnapping, which was imposed consecutively. A motion to modify sentence was denied.

## I. JURY TRIAL AND NEW COUNSEL

A jury trial was initially scheduled for November 9, 1992. It was continued to November 30, 1992, upon the defendant's motion and later to December 7, 1992, again upon the defendant's motion. On December 3, the defendant requested another continuance. The motion noted that defense counsel had never before tried to a jury a case involving a class A or B felony and sought more time in which to prepare for trial. A hearing on the motion was held on December 4, 1992. The defendant's counsel

stressed that additional time was needed for trial preparation, including time to interview the victims in the case as well as potential alibi witnesses. Counsel stated that he was not fully prepared to go to trial on December 7 as scheduled. Judge Royse denied the motion for continuance, noting that it was the defendant's third such motion. Judge Royse also noted that the defendant did not seek to obtain investigative services until after the first trial setting and that there was no explanation as to why the defense had not yet interviewed witnesses in light of the State's success at contacting the witnesses.

The defendant made an oral motion to waive jury trial on December 4, 1992. The following colloquy occurred:

"THE COURT: Mr. Fisher, have you had an opportunity to visit with Mr. Seaton [defense counsel] about this waiver of a jury trial today?

"THE DEFENDANT: Yes.

"THE COURT: And is it your desire to waive a jury trial?

"THE DEFENDANT: Yes.

"THE COURT: You understand, sir, that you have a right under both the Federal and State Constitutions to have a jury trial in this case?

"THE DEFENDANT: Yes.

"THE COURT: And you understand that if you waive a jury trial you give up your right to a jury trial and you will not have a jury trial in this case?

"THE DEFENDANT: Yes.

"THE COURT: And you understand that what will happen, sir, will be that a judge, sitting alone, will hear the evidence and will make a determination whether you are guilty or not guilty, having held the State to the burden of proof beyond a reasonable doubt? It's a long question. Do you understand a judge will decide whether you're guilty or not?

"THE DEFENDANT: Yes.

"THE COURT: And that the judge will use the standard of beyond a reasonable doubt in evaluating the evidence that's presented?

"THE DEFENDANT: Yes.

"THE COURT: Is it your desire to waive your jury in this case, Mr. Fisher?

"THE DEFENDANT: Yes."

Judge Royse apparently granted the motion, though the court made no ruling on the record. The defendant then requested a December 31, 1992, bench trial setting. Defense counsel stated, "I'm not really trying to buy time as opposed to just waiving the jury trial based on some negotiations that the District Attorney and myself have entered into, frankly, and I need some time to

get those squared away and get things worked out with the Court's permission, we would ask that the Court set the bench trial date of the 31st of December." Judge Royse denied the request, and the trial remained scheduled for December 7, 1992. On that date, the trial was rescheduled for December 31, 1992.

On December 29, 1992, the defendant filed a pro se motion seeking to withdraw his waiver of jury trial and to appoint new counsel to represent him. The motion was drafted by defense counsel at the defendant's request. The defendant provided the following reasons in support of his motion:

"1. That his attorney, Richard H. Seaton, Jr., forced him into a waiver of jury trial entered December 4, 1992.

"2. That said Waiver of Jury Trial was not a knowing, willful and intelligent waiver."

Judge Clark denied the defendant's pro se motion summarily.

The defendant argues the trial court abused its discretion in denying his motion to withdraw jury trial waiver and to appoint new counsel.

In *State v. Anderson*, 243 Kan. 677, Syl. ¶ 3, 763 P.2d 597 (1988), this court stated, "A waiver of trial by jury, voluntarily and regularly made by the defendant in a criminal action who knew and understood what he was doing, cannot afterward be withdrawn except in the court's discretion." The parties in *Anderson* agreed that the defendant had validly waived his right to a jury trial. 243 Kan. at 680. The defendant then sought to withdraw the waiver, and the trial court, by Judge Clark, denied the motion summarily. The defendant renewed his motion immediately prior to trial, and the court, by Judge Watson, again denied the motion. This court found no abuse of discretion in the denial of the motion.

The defendant points out that Judge Royse made no findings on the record that his waiver was knowing and voluntary. He reasons that the circumstances of his waiver show it was not knowing and voluntary; rather, the waiver was done after a motion for continuance was denied and was done because defense counsel was unprepared for trial the following week and the waiver had the convenient effect of ultimately giving counsel more time to

adequately prepare for trial. The defendant acknowledges that the record is devoid of any direct evidence that supports the inference that his trial counsel forced him into waiving his right to a jury trial in order to gain more time to prepare for trial, but he reasons that the cause of the lack of evidence is that the trial court failed to conduct an inquiry into the merits of the defendant's motion. The defendant points out that Judge Clark denied the motion to withdraw waiver summarily. Moreover, Judge Deer refused to permit the defendant to make a statement prior to his bench trial.

In *Anderson*, 243 Kan. at 680, the defendant's first motion to withdraw his waiver of jury trial was denied summarily. His counsel then renewed the motion at trial, and it was again denied. This court stated: "Any error by Judge Clark in ruling upon the motion in defendant's absence was clearly corrected when the motion was presented before Judge Watson in defendant's presence." 243 Kan. at 680. The defendant also complained that the trial court did not let him personally address the court in support of his motion. This court stated: "Anderson was personally present and was represented by competent counsel who was capable of articulating any concerns or arguments the defendant wanted to convey to the trial judge in connection with his motion to withdraw the waiver. We find no error." 243 Kan. at 681.

The defendant distinguishes *Anderson* from the case at bar because here, "not only was the motion for withdrawal of waiver of jury [trial] not heard at any time, but that, to compound the original error, this defendant was twice denied his right to read a statement to the court which most probably dealt with this issue."

The State asserts that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his waiver of jury trial. The State argues that the reasons given by the defendant in support of his motion to withdraw waiver were conclusory in nature and therefore did not require a hearing before the court ruled on the motion, citing *State v. Jackson*, 255 Kan. 455, 874 P.2d 1138 (1994). The State reasons that the files and records accessible to the court indicated that the defendant was not forced to waive his jury. The defendant made his waiver in open court with defense counsel present, and he expressed at that time his

understanding of the right to a jury trial and the court's duty to find him guilty beyond a reasonable doubt. Moreover, the State points out that defense counsel told the court that gaining time to prepare for trial was not the reason for the waiver.

In *Jackson*, 255 Kan. 455, the defendant pleaded guilty, was sentenced, and three weeks later filed a pro se motion to withdraw his plea of guilty. His handwritten motion to withdraw plea alleged that he was extremely pressured and pressed into entering the plea, his counsel was insufficient, he was compelled to plead guilty, and new evidence had been discovered. 255 Kan. at 456. This court held that the trial court did not abuse its discretion in summarily denying the motion to withdraw plea. This court stated: "[I]f there is no substantial question of law or triable issue of fact and the files and records conclusively show that the defendant is not entitled to relief on the motion, then there is no requirement that a hearing be held." 255 Kan. at 461. This court held that Jackson had not alleged facts sufficient to require a hearing on his motion because he had stated mere conclusions. We stated: "Mere conclusions of a petitioner for which no evidentiary basis is stated or appears are not sufficient basis for relief from conviction." 255 Kan. 455, Syl. ¶ 5.

The record here reflects that the defendant's waiver of his right to a jury trial was knowing and voluntary at the time it was made. The defendant had the opportunity to consult with counsel about the waiver. He was informed that he had the constitutional right to a jury trial and that by waiving the jury trial a judge would determine whether he was guilty under a standard of proof beyond a reasonable doubt. The defendant indicated that he desired to waive his right to a jury trial. The defendant's pro se motion to withdraw the waiver asserted that he was forced by defense counsel into waiving his jury and that the waiver was not knowing, willful, and intelligent. However, the defendant set forth no evidentiary basis for his assertions. There is no evidence in the record, other than the defendant's conclusory statements, that his waiver was not knowing and voluntary.

The defendant was present at the hearing on his motion to waive jury trial. He engaged in a brief colloquy with the court

concerning the waiver. He made no indication at that time that he was waiving his jury in the hopes of gaining more time for counsel to prepare for trial. When the defendant's counsel asked for a December 31 bench trial date, he specifically informed the court that the waiver was not done to gain additional preparation time. Moreover, when Judge Royse denied defense counsel's request to schedule a bench trial for December 31 and left the trial scheduled for December 7, the defendant did not then speak up and ask to withdraw the waiver.

The trial court's failure to conduct a hearing before denying the defendant's motion to withdraw the waiver was not an abuse of discretion in light of the defendant's failure to raise a substantial issue of fact concerning the waiver. The record shows a knowing and voluntary waiver of the right to a jury trial. The defendant's allegation that he was forced into waiving his jury is not supported by the record. The defendant has not shown that the trial court abused its discretion in denying his motion to withdraw his waiver of a jury trial.

## II. KIDNAPPING AND AGGRAVATED KIDNAPPING

Prior to trial, the defendant moved to dismiss the charge of aggravated kidnapping in the Spears Restaurant incident. He argued the movement of Randy Spears to the office to obtain the key to the safe was only incidental to the crime of robbery and was not sufficient to support a conviction for aggravated kidnapping. The trial court denied the motion, finding that the movement of Spears from behind the cash register, through a waitress station, through a hallway, through the kitchen, and into the office was not slight or inconsequential and that the movement lessened the risk of detection and made the crime easier of commission.

The defendant renewed his motion at trial. The parties briefed the issue, and the court heard argument. The court again denied the motion.

On appeal, the defendant argues that the evidence was insufficient to support a conviction for the aggravated kidnapping of Randy Spears and also for the kidnapping of Laurie Traffas. He reasons that the movement of Spears and Traffas from the safe

to the back office to obtain a key to the safe was incidental to the crime of robbery and was insufficient to constitute kidnapping.

K.S.A. 21-3420 defines kidnapping in relevant part as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . [t]o facilitate flight or the commission of any crime." Aggravated kidnapping is kidnapping where bodily harm is inflicted upon the person kidnapped. K.S.A. 21-3421. The State charged that the kidnapping of Traffas and the aggravated kidnapping of Spears were done to facilitate the commission of the crime of robbery or aggravated robbery.

Both the defendant and the State cite *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976). *Buggs* is the leading Kansas case which discusses in depth the crime of kidnapping and the elements necessary to establish the offense where a taking or confinement occurs to facilitate the commission of another crime. This court stated:

"The word 'facilitate' in K.S.A. 21-3420 means something more than just to make more convenient. A taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.' "

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

(*b*) Must not be of a kind inherent in the nature of the other crime; and

(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. 203, Syl. ¶¶ 9, 10.

In *Buggs*, the victims were accosted outside a Dairy Queen at the fringe of the parking lot, where they were subject to public view. The defendants forced them to return to the relative seclusion of the inside of the closed restaurant, although the robbery could have been accomplished outside the store or without forcing the victims into the store. This court held that the movement from outside the restaurant to inside the restaurant substantially

reduced the risk of detection and was a taking or confining necessary to facilitate the commission of a robbery and a rape. 219 Kan. at 216-17. This court also gave examples, subject to qualification, of the extent of taking or confining necessary to support a kidnapping, stating:

"For example: A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is." 219 Kan. at 216.

The defendant argues that the movement in this case is indistinguishable from "[t]he forced direction of a store clerk to cross the store to open a cash register," which *Buggs* said is not a kidnapping.

The State, conversely, contends the *Buggs* example and the case at bar are distinguishable: In the case at bar, the robbers moved Spears and Traffas through three or four doors to an area not readily accessible to the public 100 feet away, giving the robbers access to money from the safe and Traffas' purse. The State reasons that the movement was not slight or inconsequential or inherent in the crime of aggravated robbery because the aggravated robbery could have been completed without moving Spears and Traffas to the office. The robbers had already taken money from the cash register and could have foregone the money in the safe or retrieved the key from the office without taking Spears and Traffas to the office. Moreover, the State reasons, the movement and confinement made the crime regarding the safe substantially easier of commission and substantially lessened the risk of detection because the safe would have been virtually impossible to open without the key and because the robbers spent less time in the restaurant.

Both parties also cite *State v. Pink*, 236 Kan. 715, 696 P.2d 358 (1985). In *Pink*, the defendants moved two victims into a cooler and then removed one victim so she could open the cash registers and attempt to open the safe. This court held the evi-

dence sufficient to support two counts of kidnapping, stating: "The forcible moving of the victims to the cooler in order to facilitate the robbery was clearly a kidnapping within the meaning of the statute and *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976)." *Pink*, 236 Kan. at 729-30. The defendant stresses that the fact one victim was taken throughout the inside of the store to open the cash registers and safe was not relied upon by the *Pink* court in sustaining the kidnapping convictions. The State refers to *Pink* as a kidnapping case where the victim was taken from the cash register area to the office where the safe was located. We find *Pink* inapposite. It made no difference in *Pink* whether the victims were moved throughout the store or not because placing them in the cooler was sufficient to establish the kidnapping; this court simply did not address or express an opinion as to whether the movement throughout the store would or would not have been sufficient for a kidnapping conviction.

Examples of cases where this court found that a kidnapping occurred include the following: *State v. Alires*, 246 Kan. 635, 792 P.2d 1019 (1990) (defendant forced victim of convenience store robbery out of store and onto combine in parking lot to hide the fact that a robbery was in progress and to facilitate escape); *State v. Turbeville*, 235 Kan. 993, 686 P.2d 138 (1984) (defendant moved victims from front display area of store to office at back of store before committing attempted murder); *State v. Weigel*, 228 Kan. 194, 612 P.2d 636 (1980) (defendant forced bank employees into bank vault and attempted to lock the vault door to facilitate escape); *State v. Nelson*, 223 Kan. 572, 575 P.2d 547 (1978) (victims ordered into unlocked refrigerator during robbery of restaurant); *State v. Brooks*, 222 Kan. 432, 565 P.2d 241 (1977) (three victims in hardware store robbery herded to rear of store and bound with tape, fourth victim bound and confined in the restroom).

In *Kirtsey v. Florida*, 511 So. 2d 744, Syl. (Fla. Dist. App. 1987), the Florida Court of Appeals, under facts similar to those occurring at Spears Restaurant, held:

"There was insufficient evidence of incidental acts, separate from simultaneously occurring attempted robbery, to establish kidnapping where confinement

and movement of robbery victims was limited to interior of restaurant where robbery occurred; though acts of confinement and movement were not inherent in offense of robbery, and may have made attempted robbery easier to commit, acts were slight and merely incidental to robbery offense."

The evidence here was not sufficient to support the crimes of kidnapping and aggravated kidnapping distinct from the crime of aggravated robbery in the Spears incident. The events at the Spears Restaurant do not rise to the level discussed in the cases above where this court found that kidnapping did occur. *Buggs* requires that the movement "have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. 203, Syl. ¶ 10.

The movement of Spears and Traffas neither made the crime substantially easier of commission, nor did it substantially lessen the risk of detection. The forced direction of Spears and Traffas through the restaurant was merely for the purpose of convenience, not to make the crime substantially easier of commission. It was more convenient to have Traffas and Spears, who knew where the key to the safe was located, obtain the key rather than the robber alone looking for the key and rather than attempting some other means of entry into the safe. Moreover, Spears and Traffas were not forced to remain in the back office, out of sight of any passersby, to lessen the risk of detection; rather, they returned to the front of the store. Indeed, while one robber walked with Spears and Traffas to the office, the one who remained in the front area of the store with the other victims was fully visible through the window of the restaurant. (The officer responding while the robbery was taking place observed the other robber through the window.)

This case is no different from "the forced direction of a store clerk to cross the store to open a cash register" described in *Buggs*. Under all the factual circumstances presented in the record, the crimes of aggravated kidnapping and kidnapping distinct from the crime of aggravated robbery were not established. The defendant's convictions for aggravated kidnapping and kidnapping arising out of the Spears Restaurant incident must be reversed.

## III. MULTIPLICITOUS CHARGES

During the Spears Restaurant robbery, one of the robbers hit Randy Spears on the head with the butt of his gun, causing injury. That act of force and injury provided the basis for the charge of aggravated battery and also provided the requisite harm to make the kidnapping of Spears aggravated. The defendant argued in the trial court that the charges for the aggravated kidnapping and aggravated battery of Randy Spears were multiplicitous because they were premised on the same injury. The trial court disagreed. This court need not reach the issue because we have held there was no aggravated kidnapping. There was an aggravated battery, and that conviction is affirmed.

## IV. SENTENCE

The defendant argues that the district court abused its discretion in sentencing him to a controlling term of life plus 15 years to life because the sentence exceeds that imposed on his coconspirators in the Spears Restaurant robbery and the trial court gave no reasons for imposing a longer sentence. This issue is now moot by reason of our reversal of the aggravated kidnapping charge which is the basis of the life sentence.

The State has not raised and neither party has briefed the issue of whether this court has authority to vacate the remaining sentences, or at least the sentences for the offenses arising out of the Spears Restaurant incident, and remand for resentencing. The law in Kansas and other states concerning sentences has generally been stated as follows: "Where a valid sentence has been pronounced in a criminal case and has been put into execution, the trial court is without authority to set such sentence aside and impose a new sentence." *State v. Lyon*, 207 Kan. 378, Syl. ¶ 3, 485 P.2d 332 (1971). The trial courts do have authority and jurisdiction to correct unlawful, void, and invalid sentences.

A line of cases in other jurisdictions considers what happens when one or more sentences imposed as part of a sentencing package are vacated because the defendant for whatever reason could not be convicted of or sentenced for one or more of the crimes the defendant was sentenced for committing. Basically,

these cases hold that when a defendant is given a sentencing package and one or more of the sentences are permanently vacated, it does not violate the double jeopardy clause to vacate the sentences that were not at issue on appeal and to remand for resentencing. Of course, *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), would apply. The theory is that by allowing resentencing, the sentencing court can re-evaluate the sentencing package in light of the remaining convictions and resentence the defendant to effectuate the court's original sentencing intent. See for example *United States v. Young*, 953 F.2d 1288 (11th Cir. 1992); *United States v. Dominguez*, 951 F.2d 412 (1st Cir. 1991), *cert. denied* 504 U.S. 917 (1992); *United States v. Vontsteen*, 950 F.2d 1086 (5th Cir.), *cert. denied* 505 U.S. 1223 (1992); *United States v. Welch*, 928 F.2d 915 (10th Cir.), *cert. denied* 502 U.S. 850 (1991); *Kelly v. Neubert*, 898 F.2d 15 (3d Cir. 1990); *United States v. Pimienta-Redondo*, 874 F.2d 9 (1st Cir.), *cert. denied* 493 U.S. 890 (1989); *United States v. Diaz*, 834 F.2d 287 (2d Cir. 1987), *cert. denied* 488 U.S. 818 (1988); *United States v. Shue*, 825 F.2d 1111 (7th Cir. 1987); *United States v. Lail*, 814 F.2d 1529 (11th Cir. 1987); *United States v. Kuna*, 781 F.2d 104 (7th Cir. 1986); *United States v. Bello*, 767 F.2d 1065 (4th Cir. 1985); *United States v. Sales*, 725 F.2d 458 (8th Cir. 1984); *United States v. Moore*, 710 F.2d 270 (6th Cir.), *cert. denied* 464 U.S. 997 (1983); *United States v. Busic*, 639 F.2d 940 (3d Cir.), *cert. denied* 452 U.S. 918 (1981); *State v. MacGillivray*, 162 Ariz. 539, 785 P.2d 59 (1989); *State v. Raucci*, 21 Conn. App. 557, 575 A.2d 234 (1990); *White v. State*, 576 A.2d 1322 (Del. Super. 1990); *Thorne v. United States*, 471 A.2d 247 (D.C. 1983); *Herring v. State*, 411 So. 2d 966 (Fla. Dist. App. 1982); *State v. Neville*, 572 So. 2d 1161 (La. App. 1990); *State v. Keefe*, 573 A.2d 20 (Me. 1990); *State v. Rodriguez*, 97 N.J. 263, 478 A.2d 408 (1984); *State v. Hersch*, 467 N.W.2d 463 (N.D. 1991); *Com. v. Sutton*, 400 Pa. Super. 291, 583 A.2d 500 (1990); *State v. Larson*, 56 Wash. App. 323, 783 P.2d 1093 (1989); *State v. Martin*, 121 Wis. 2d 670, 360 N.W.2d 43 (1985).

Neither party has requested, raised, or briefed the issue of resentencing, and we decline to raise the issue on our own.

The trial court is affirmed in part (motion to withdraw waiver of right to a jury trial and for new counsel and defendant's conviction for aggravated battery) and reversed in part (the convictions for aggravated kidnapping and kidnapping arising out of the Spears robbery), and the case is remanded to the trial court to vacate the sentences imposed for the two convictions reversed.