NOT DESIGNATED FOR PUBLICATION

No. 113,111

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DELANO E. HALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed March 17, 2017. Affirmed in part, dismissed in part, convictions reversed, and case remanded with directions.

*Carl F.A. Maughan* and *Sean M. A. Hatfield*, of Maughn Law Group LC, of Wichita, for appellant, and *Delano E. Hall*, appellant pro se.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

BUSER, J.:  Following a bench trial, the district court convicted Delano E. Hall of rape, aggravated kidnapping, aggravated battery, and aggravated criminal sodomy. On appeal, Hall contends the district court erred when it sustained the State's motion to enforce his jury trial waiver and refused to allow him to withdraw it; failed to consider his pretrial pro se motions; ruled that his pretrial statements made to the investigating officer were voluntary; and denied his request to question the victim as to her previous sexual conduct. Additionally, Hall claims error because the State failed to present

1

sufficient evidence of his guilt and he asserts the cumulative effect of all the errors deprived him of a fair trial.

Upon our review of the record and the parties' briefs, we conclude the district court erred when it sustained the State's motion to enforce Hall's jury trial waiver. Accordingly, we reverse Hall's convictions. Additionally, because some of the other issues Hall raises on appeal may arise upon retrial, we affirm those issues, dismiss two other issues as moot, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2013, N.F. reported that her boyfriend, Hall, committed acts of domestic and sexual violence against her. Hall was later charged with rape, a severity level 1 felony, in violation of K.S.A. 2012 Supp. 21-5503(a)(1)(A); aggravated kidnapping, a severity level 1 felony, in violation of K.S.A. 2012 Supp. 21-5408(a)(3), (b); aggravated battery, a severity level 7 felony, in violation of K.S.A. 2012 Supp. 21-5413(b)(1)(B); and aggravated criminal sodomy, a severity level 1 felony, in violation of K.S.A. 2012 Supp. 21-5504(b)(3)(A). Hall waived his right to a jury trial, although he later sought to withdraw the waiver. Nevertheless, the district court enforced the waiver and ordered a bench trial.

At trial, the district court heard testimony from N.F. She testified that in April 2013, Hall spent some time in Oklahoma, but returned to her home on Sunday, April 14, 2013. On the evening of April 15, 2013, Hall was in a foul mood and an argument ensued in the home. The argument escalated with Hall making a growling noise and running at N.F. Hall scared N.F., so she slapped him in an attempt "to bring him back to reality." In response, Hall went into the living room, sat down, and started talking to himself. N.F. did not want to continue fighting, so she sat down beside him. Hall resumed the argument and, during a rant, he tried several times to hit N.F. on her back, so N.F. tried to leave.

2

Hall caught N.F. in the hallway, placed his arm around her neck, and began choking her. During the assault, he said, "[Y]ou're [a] bitch, you're not going to talk to me crazy. You can't just talk to me any way you think you can just talk to me any way you want." N.F. had difficulty breathing, and at some point, she lost consciousness and urinated on herself. In addition to the choking incident, N.F. explained that Hall kept hitting her on the back of the head, and at some point during the evening, Hall knocked her down, kicked her, and called her "a dog."

When N.F. awoke, she was lying on the floor and Hall was over her. Hall then stated, "Get your ass in the bedroom. You're gonna give me my birthday sex." In an effort to avoid further physical abuse, N.F. complied. Once in the bedroom, Hall ordered N.F. to remove her clothing and get in bed. N.F. refused and told Hall that she wanted to leave. Hall trapped N.F. in the corner of the room. She attempted to escape, but Hall foiled her attempts. Using his forearm, Hall delivered multiple blows to N.F.'s back, and at some point thereafter, N.F. submitted to his wishes and laid in bed nude. According to N.F., Hall then forced her to engage in multiple instances of oral sex and sexual intercourse. Of note, during the rape, Hall bit N.F. on her "jaw bone and [her] face."

N.F. showered and the two of them sat down on the couch in the living room. Hall started to cry and told N.F. that he did not mean to hurt her. N.F. responded by telling Hall that she wanted him to leave her house. Angered by the statement, Hall told N.F. that he was going to stay until Friday because he needed money. To keep the peace, N.F. told Hall he could stay as she began making plans to leave.

Sometime thereafter, on April 16, 2013, N.F. told Hall that she was going to her girlfriend Shayla's house for a haircut. Hall allowed N.F. to leave, and she went directly to Shayla's house and showed her the injuries Hall had inflicted. These included extensive bruising and a bite mark on her face. N.F. wanted Hall "to be as scared as [she was]," so she called him from Shayla's house and told him she was "going to go tell the

cops what he did to [her], and that he better run." N.F. called 911, and shortly thereafter went to the Wichita Police Department to make a report.

According to Officer Karen Blank of the Wichita Police Department, when N.F. reported the abuse, she was distraught, crying, and shaking. Officer Blank noticed that she had petechiae in her eyes consistent with someone placing "a significant amount of pressure around [her] neck," and "massive amounts of bruises all over her body." A sexual assault examination conducted at Wesley Medical Center revealed significant bruising on N.F.'s body, including petechiae inside and outside of her eye, lacerations, and multiple abrasions to her vaginal region.

Sergeant Sarah J. Oldridge was the primary investigator on the case. Following Hall's arrest on April 18, 2013, she conducted an interview of him. According to Sergeant Oldridge, during the recorded interview Hall told her that he struck N.F. and, as a result, injured his arm. The officer photographed bruising and swelling on Hall's forearm. Prior to waiving his *Miranda* rights, Hall claimed his innocence of rape and kidnapping, but while he stated that N.F. "hit [him] first," he said that he would "plead guilty to . . . the domestic violence."

Hall presented the preliminary hearing testimony of Natalie Wilkerson, the mother of his son, because she did not honor her subpoena to appear at trial. In her testimony in support of Hall's alibi, Wilkerson attempted to establish that Hall was with her during the time of the charged offenses.

At the conclusion of the bench trial, on September 10, 2014, the district court found Hall guilty as charged. On October 31, 2014, Hall was sentenced to 391 months in prison followed by lifetime postrelease supervision.

Hall filed this timely appeal.

4

For his first issue on appeal, Hall asserts the district court erred in sustaining the State's motion to enforce Hall's jury trial waiver. For its part, the State responds that Hall's waiver of jury trial was properly handled and that Hall failed to show any basis justifying a withdrawal of that waiver.

On Friday, August 23, 2013 (about 1 year prior to the bench trial of this matter), the district court held a hearing to consider the State's motion to continue Hall's jury trial. The State sought the continuance because the jury trial was set for the following Monday and Hall, who was pro se, had recently filed 23 motions. At the outset, Judge Warren M. Wilbert "permanently assigned" the case to Judge Terry L. Pullman for further proceedings. Judge Wilbert then granted the State's motion to continue the trial in order to "digest and hear all [of Hall's] motions before [his] jury trial." In response, Hall abruptly stated, "I waive my right to jury trial. I ask for a bench trial." Judge Wilbert replied, "Well, even better then. Judge Pullman can hear that, but you have to do the waiver in front of Judge Pullman." Hall replied, "I sure will. Thank you."

Inexplicably, however, when the State advised Judge Wilbert that it wanted to discuss Hall's recent motion to remove and replace his standby counsel, Timothy R. Frieden, the following colloquy occurred:

> "THE COURT: . . . Mr. Hall, you have indicated you wish to waive your right to a jury trial?
> "[HALL]: Yes. I ask for a bench trial and Brady reasons.
> "THE COURT: Mr. Hall, you are entitled to a trial by jury of 12 individuals to determine your guilt or innocence. If you give up that right, then your case would be tried to a Court as a bench trial matter or disposed of by way of a plea agreement. Do you have any questions about your right to a jury trial?
> "[HALL]: No.

> "THE COURT:  Are you wanting to waive your right to a jury trial?
>
> "[HALL]:  I do waive the right to a jury trial."

Based upon this brief exchange, Judge Wilbert accepted Hall's waiver and scheduled the matter for a bench trial before Judge Pullman.

About 2 months later, on October 18, 2013, Judge Pullman held a motions hearing. At the hearing, Judge Pullman noted that he was "about to order that [Hall] be appointed an attorney" because it appeared that he did not know how to effectively represent himself in a legal proceeding. In response, Hall requested the appointment of an attorney. As a result, Judge Pullman appointed Frieden, who had previously served as standby counsel, as Hall's attorney.

Shortly thereafter, Frieden filed a motion seeking a competency evaluation for Hall due to his "good faith belief that [Hall was] unable to understand the nature of the proceedings against him and to assist with his defense." On November 1, 2013, over Hall's vehement objection, Judge Wilbert ordered the evaluation and removed the case from the trial docket.

Subsequently, on December 11, 2013, based on a psychologist's evaluation, Judge John R. Kisner, Jr., determined that Hall was competent to stand trial. Frieden objected to this conclusion, however, arguing that

> "in my assessment over numerous years of practicing law I don't believe Mr. Hall is competent—
>
> . . . .
>
> "[Frieden:]—the [pro se] motions are of such a nature that they really don't make much sense. I mean, you can read them, the words are there, the sentences are there, but he's—he talks and argues in circles. Mr. Hall is insisting on representing himself again."

6

Of note, before concluding the competency hearing, Judge Kisner said he "would probably set [the case] for bench trial," whereupon Hall volunteered, "I don't want a bench trial, Your Honor." Judge Kisner did not respond to Hall's statement; instead, he set the case on the bench trial docket and indicated that the assigned judge could address any unresolved matters.

On January 22, 2014, Frieden filed a second motion for a competency determination. In this motion, Frieden related that following a "productive meeting" with Hall that lasted over 2 hours at the jail on January 3, 2014, Frieden received an email from Hall claiming a conflict of interest in his representation and that Frieden had violated his civil rights. Hall subsequently refused to see Frieden or his investigator. These behaviors, coupled with the contents of Hall's pro se motions, caused Frieden to once again move to determine Hall's competency.

Over Hall's vehement objection, on January 24, 2014, the district court issued an order for a competency evaluation to be conducted at Larned State Hospital. On June 17, 2014, upon Judge Wilbert's review of the report, he found Hall was competent to stand trial and assist in his defense. On this occasion, Frieden unsuccessfully argued, "I think [Hall's] demeanor is such that, he has such anger somehow toward me that he, that makes him incompetent. He is not able to listen to anything I have to say or talk to him about."

At the conclusion of the hearing, Judge Wilbert inadvertently indicated the case would be set on the jury trial docket. When the prosecutor informed the judge that it should be set for a bench trial, Hall interrupted, "Thank you. That's, it's jury trial. It's a jury trial. No." When the prosecutor began to state that Hall had waived his jury trial right, Hall again interrupted and said, "No, I did not, Your Honor."

Due to Hall's competency issues, however, Judge Wilbert set the case on the jury trial docket: "It does indicate [that Hall is] on the bench trial docket, but given the issue

7

of competency and whether or not he is competent to waive his right to jury trial, I will put it back on the jury trial docket." The judge advised the prosecutor that the State could file a motion to enforce the jury trial waiver if it wished to do so.

The State filed a motion to enforce Hall's jury trial waiver, and on July 21, 2014, the district court held a hearing on the matter. At the hearing, M. Steven Wagle, Hall's newly appointed attorney, argued that Hall's waiver was not knowingly and voluntarily made because of Hall's "mental health status." Wagle explained that Hall made the waiver against Frieden's advice as standby counsel while he was acting pro se and, as Frieden's competency motions demonstrated, Hall did so at time when his competence was questionable.

Judge Wilbert granted Hall's request to address the court. Hall stated:

"I wish to say, Your Honor, that I had invoked and still do invoke my rights to jury trial. I have a waiver for a bench trial under Brady rules for, to invoke my right to jury trial, pursuant to the fair trial rights act. I was—Mr. Frieden's signature is all on this paperwork. I also told Mr. Frieden that I wanted a jury trial. Mr. Frieden had ill-advised me to waive my rights to a jury trial for a bench trial under Brady rules, which there is no such thing."

After Judge Wilbert reminded Hall that he admonished him about of the consequences of waiving his jury trial right and he still waived it, the following discussion occurred:

"THE COURT: So why isn't that a knowing, intelligent and voluntary waiver of your right to a jury trial?
"[HALL]: It was not, because I was unaware of the legal procedures and what I was doing and I was ill-advised by Mr.—
"THE COURT: No. I advised you of all that under *State v. Lowe*.

8

"[HALL]:  I understand, Your Honor. If I may please speak, sir. All I'm saying is that my rights to a jury trial, which I'm guaranteed, is all I ask the Court for.

"THE COURT:  And you can waive your constitutional rights. People do it all the time. They can consent to a search and seizure, they make a voluntary confession after a *Miranda* warning, and some people stand up in court and waive their right to a jury trial. That is what you did in August of 2013.

"[HALL]:  I understand that, Your Honor, but as I said, I had filled out paperwork. I also filed a motion to invoke.

"THE COURT:  That is buyer[']s remorse. You changed your mind. We don't just flip-flop back and forth. We have dockets. We have trials that we have to schedule. We assign judges to hear cases. DA's are assigned to cases. We allocate our resources to take care of the cases on bench trial and jury trial dockets. You waived your right to a jury trial in August of 2013.

"[HALL]:  And I invoke my right today to a jury trial.

"THE COURT:  It's too little, too late. Once you waive a right, you don't get to say oops, I have had a change of heart. I want to go back. It's like I really don't want to give that confession I gave.

"[HALL]:  I understand, Your Honor.

"THE COURT:  I don't want to waive that. I want to invoke my right against unlawful search and seizure. I want to revoke my consent when they searched my car and my house and found all those drugs. People can't just undo their waivers.

"[HALL]:  I understand, Your Honor, but I had a motion eight months ago, a motion, eight months ago. A motion again for a jury trial, due to the misconduct on my case.

"THE COURT:  When did you file that?

""[HALL]:  Due to Mr. Frieden's ill-advice and all the underhanded tricks that were played on my case. I have to have a jury trial and that is what I want, a jury trial. For the record, I'm invoking my right to jury trial.

"THE COURT:  What tricks was he playing in August of 2013?

"[HALL]:  He was the one that advised me.

"THE COURT:  No, you were the one that filed 23 motions.

"[HALL]:  No, he advised me—

"THE COURT:  You filed 23 motions that had to be heard by Judge Pullman.

9

"[HALL]: He advised me to waive my rights, saying if I had a bench trial under Brady rules, I could force the judge to subpoena all my evidence. I was ill-advised by an attorney and I was angry at the time. No, I was not competent, because I was angry at the time that I made my decision.

"THE COURT: Well, people make angry or irrational decisions all the time.

"[HALL]: I am asking per due process to have my rights reinstated, sir."

Judge Wilbert was not persuaded. He sustained the State's motion to enforce Hall's jury trial waiver and explained:

"Well, after being reminded of the procedural history and all the steps that the Court went to to protect your constitutional rights, to advise you of the dangers and the perils of self-representation and in which you insisted on representing yourself, and you insisted on waiving your right to a jury trial, and despite any buyer[']s remorse and motion that you filed and despite a competency evaluation, you were found competent, and when Mr. Frieden wanted to have you reevaluated, you objected. You screamed from the jury box and you said I'm competent. I don't need to go back. They found me competent. I want to proceed. And when I put your case back on the docket in that flurry, I won't sugarcoat it, was a heated exchange, you were much more vocal and much more angry than you are today, you were screaming from the jury box, and I put you on the jury trial docket."

Prior to the bench trial, Wagle renewed Hall's motion for a jury trial, but Judge Benjamin L. Burgess denied the motion based upon his review of the transcripts pertaining to the jury trial waiver. Following his convictions, Hall renewed his challenge to the district court's refusal to grant his request to withdraw his jury trial waiver in a timely motion for new trial. The district court denied Hall's motion.

On appeal, Hall contends that his jury trial waiver was not knowingly and intelligently given because it was entered "during a period of questionable competence," and, thus, he claims the district court abused its discretion when it denied his request to

10

withdraw his waiver and invoke his constitutional right to a jury trial. We will first consider the circumstances surrounding Hall's jury trial waiver and then analyze the propriety of the district court's order sustaining the State's motion to enforce the waiver.

Whether a defendant validly waived his or her jury trial right is a factual question; therefore, we review a district court's ruling on this issue under the substantial competent evidence standard. *State v. Rizo*, 304 Kan. 974, 979, 377 P.3d 419 (2016). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). If, however, the facts underlying the defendant's jury trial waiver are undisputed, we review the matter de novo, without deference to the district court's decision. *Rizo*, 304 Kan. at 979.

Hall, as a criminal defendant charged with a felony, had both a constitutional and a statutory right to a jury trial. See U.S. Const. amend. VI; Kan. Const. Bill of Rights, §§ 5, 10; K.S.A. 22-3403. However, a defendant may waive this right in favor of a bench trial if the district court and the State agree to the waiver. *State v. Lewis*, 301 Kan. 349, 376, 344 P.3d 928 (2015). Under the American Bar Association's standards for accepting a jury trial waiver, our Supreme Court has stated: "'[F]or a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record.'" *State v. Beaman*, 295 Kan. 853, 859, 286 P.3d 876 (2012) (quoting *State v. Irving*, 216 Kan. 588, 590, 533 P.3d 1225 [1975]). Of note, waivers should be "'strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury.' [Citations omitted.]" *Rizo*, 304 Kan. at 980.

When determining whether a jury trial waiver is valid, courts consider whether it was "'voluntarily made by a defendant who knew and understood what he or she was

11

doing'"; this determination is dependent upon the particular facts and circumstances in each case. *Rizo*, 304 Kan. at 980. As our Supreme Court explained in *Beaman*:

> "[J]ust the form of a waiver alone cannot be an appellate court's determinant. Full consideration of the facts and circumstances surrounding a defendant's waiver of his or her jury trial right is necessary in deciding whether a knowing and voluntary waiver occurred in any given case. In other words, the form of the process is not a substitute for the court's careful scrutiny of the facts and circumstances, which give important context to the process. [Citation omitted.]" 295 Kan. at 861.

We question whether substantial competent evidence supported Judge Wilbert's determination that Hall knowingly and voluntarily waived his right to a jury trial. In this regard, several factors are worth noting. At the outset, Hall was pro se with standby counsel. His pro se representation necessarily put the district court on notice of the potential for Hall to be uninformed or ill-informed regarding this all-important constitutional right. Moreover, Hall's 23 handwritten motions were documentary confirmation of the limited knowledge and confused understanding that Hall exhibited regarding legal matters generally.

Second, the issue of the waiver arose spontaneously when, during the hearing on the State's motion to continue the jury trial, Hall suddenly advised the district court of his willingness to waive his right to a jury trial. The impulsive, extemporaneous nature of Hall's oral waiver in the midst of a hearing on another matter is disconcerting.

Third, the lack of any apparent reason for Hall's decision also raises questions regarding his appreciation for the importance of his waiver. Indeed, Hall informed the district judge, "I ask for a bench trial *and Brady reasons*." (Emphasis added.) The meaning of "Brady reasons" is unknown. On this record, if "Brady reasons" were the basis for Hall's waiver, Hall's decision makes no sense. As a result, we are left to speculate.

12

Fourth, the procedure employed by the district court raises questions regarding whether Hall fully understood the importance of his waiver. Judge Wilbert advised Hall that he would have to complete his waiver in front of Judge Pullman. Hall replied, "I sure will. Thank you." Then, without explanation, Judge Wilbert proceeded to advise Hall that he was entitled to a 12 person jury to determine his guilt or innocence and if he gave up that right his case would be tried to the court or disposed of by a plea agreement. In response, Hall said that he waived his right to a jury trial. We discern no reason why Judge Wilbert would have informed Hall of the necessity for Judge Pullman to accept his waiver and then have Judge Wilbert proceed to accept Hall's waiver. This procedure is puzzling to us and we suspect it may have been confusing to Hall.

Finally, although the record shows that Judge Wilbert complied with the basic *Irving* requirements that a defendant be advised of his right to a jury trial and personally waive that right in writing or in open court, given the aforementioned circumstances of this case we are not persuaded the limited colloquy was sufficient to fully inform Hall of this right and insure his understanding of his waiver. In *Beaman*, for example, our Supreme Court upheld a jury trial waiver by noting the trial judge had a "thoughtful exchange" with Beaman, encouraging him that a "'defendant is almost always better off taking a case in front of a jury,'" suggesting that perhaps older judges "'get to be kind of maybe even a little bit prosecution oriented,'" emphasizing that Beaman's attorney was "'adamant'" that he should not waive his right, and thoroughly discussing with Beaman the reasons the defendant wanted to waive a jury trial. 295 Kan. at 854-55, 861. Under these circumstances our Supreme Court validated Beaman's waiver. 295 Kan. at 860-62. The very brief and basic colloquy in this case, however, does not compare to *Beaman*.

Having questioned the knowing and voluntary nature of Hall's jury trial waiver, the issue then becomes: Did the district court err when it sustained the State's motion to enforce Hall's waiver? In Hall's view, the district court "could have easily and simply erred on the side of due process and granted [Hall] his request to invoke a fundamental

13

right." The State counters that Hall "made a strategic decision to waive a jury trial because he realized that was the only way he could seemingly expedite the process."

"'A waiver of trial by jury, voluntarily and regularly made by the defendant in a criminal action who knew and understood what he was doing, cannot afterward be withdrawn except in the court's discretion.'" *State v. Fisher*, 257 Kan. 65, 71, 891 P.2d 1065 (1995); see *State v. Lawrence*, 216 Kan. 27, 28, 530 P.2d 1232 (1975). As a result, we review a district court's refusal to allow a defendant to withdraw a valid jury trial waiver for an abuse of discretion. See *Fisher*, 257 Kan. at 71-74. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would have taken the view adopted by the district court; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Kansas law recognizes several factors that are important to a district court's determination of whether to allow a defendant to withdraw a jury trial waiver. In particular, a district court may consider the timeliness of the request, any delay in making it, and the inconvenience the change might cause. *State v. Pruett*, 213 Kan. 41, 47-48, 515 P.2d 1051 [1973]. See *State v. Daigle*, 220 Kan. 639, 643, 556 P.2d 400 (1976) ("Among the factors to be considered by a trial court confronted by such a motion are the timeliness of the motion to withdraw the waiver and whether a delay of trial or serious inconvenience of witnesses would result from granting such motion."), *cert. denied* 430 U.S. 983 (1977). The district court may also take into account how busy its docket is when deciding whether to reshuffle the docket to fit in another jury trial. See *Lawrence*, 216 Kan. at 30.

In the State's motion to enforce Hall's jury trial waiver and at the hearing on the motion, the State did not argue that Hall's requests to withdraw his waiver were untimely, that witnesses would be inconvenienced, or that the State would be prejudiced in any

14

way. On the other hand, Wagle, Hall's newly appointed counsel, contended that at the time of Hall's waiver, Frieden, Hall's standby counsel

> "advised Mr. Hall not to waive his jury trial rights. The matter wasn't even on the Court's radar at that time. . . .
>
> "Mr. Hall just spoke up in court, 'I want to waive. I want to give up my jury trial. I want a bench trial.' Now Mr. Frieden has filed several competency motions on Mr. Hall, and Mr. Frieden at that time advised Mr. Hall to stop saying that, stop waiving his jury trial, and that all goes to knowingly. The man is acting pro se. He doesn't know what he is doing . . . .
>
> " . . . [A]nd it's our opinion that it was not voluntary, it was not knowingly made, because of his mental health status."

As summarized earlier, at the hearing on the State's motion to enforce the waiver, Hall directly contradicted Wagle claiming, "I also told Mr. Frieden that I wanted a jury trial. Mr. Frieden had ill-advised me to waive my rights to a jury trial for a bench trial under Brady rules, which there is no such thing." Hall also asserted that Frieden had erroneously advised him that if he had a bench trial he "could force the judge to subpoena all my evidence" and that Hall was not competent at the time because he was angry.

In his ruling sustaining the State's motion, Judge Wilbert stated his belief that Hall should not be allowed to withdraw his waiver because other than buyer's remorse, Hall advanced no valid reasons for withdrawal of the waiver.

We find the district court's ruling unreasonable. In addition to the many questionable circumstances attendant to Judge Wilbert's acceptance of Hall's waiver, the statements and arguments made during the hearing showed that either Hall initially disregarded Frieden's legal advice not to waive his jury trial right or that Hall subsequently realized that Frieden's advice to waive the jury trial was ill advised. Under either scenario, there was some basis for Judge Wilbert to reconsider Hall's original

15

waiver. Moreover, Hall informed the district court beginning on December 11, 2013, and again on January 24, 2014, in advance of the hearing on July 21, 2014, that he desired a jury trial. In short, Hall did not delay or equivocate in requesting a withdrawal of his waiver.

On the other hand, there was no evidence or argument that allowing Hall to withdraw his waiver would be disadvantageous to the district court or the State. Although Judge Wilbert noted that the court maintained trial schedules and allocated resources accordingly, there was no claim that rescheduling Hall's case for jury trial would adversely impact the court or affect Hall's speedy trial rights. And as noted earlier, the State did not claim any prejudice or inconvenience in setting the case for jury trial.

Having carefully considered the factors that are important to an appellate court's review of a district court's decision whether to allow a defendant to withdraw a jury trial waiver, we reverse Hall's convictions and remand to allow him to withdraw his jury trial waiver and for further proceedings. Next, we will consider all but one of the other issues Hall has raised on appeal because they may arise on retrial.

PRO SE MOTIONS

Hall filed a voluminous number of pro se motions prior to his trial. When Hall was not representing himself, the district court forwarded the motions to his attorney of record and advised that they would only be considered by the court if the attorney agreed to adopt the issues and request a hearing.

On appeal, Hall claims the district court "denied [him] a fair trial and prevented [him] from fully advancing his defense . . . when the court . . . failed to consider all of [his] motions, particularly the nine pro se motions filed a week prior to the trial in this

16

matter." The State responds that the "reviewability of this issue is compromised by [Hall]'s failure to brief the issue with any degree of specificity."

Upon our review, Hall never identifies by name or record citation which of the various motions give rise to this claim and he did not provide any argument regarding the issues he seeks to address or the prejudice he suffered as a result of the district court's failure to consider those issues. We agree with the State that "[t]his court is not required to comb the record to find support for [Hall]'s claims." It is fundamental that issues not briefed by the appellant and points raised incidentally in a brief and not argued therein are deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). This issue is waived or abandoned.

THE SUFFICIENCY OF THE EVIDENCE

Hall contends the trial evidence was insufficient to prove his guilt, beyond a reasonable doubt, of rape, aggravated kidnapping, aggravated criminal sodomy, and aggravated battery. He argues that the State's evidence was "solely based on the credibility of its witnesses—he said, she said"—and the testimony presented by his alibi witness demonstrated that he was not "where the [S]tate alleged him to be, but rather he was at another location with Natalie Wilkerson." Additionally, with regard to his conviction for aggravated kidnapping, Hall alleges the evidence was insufficient because N.F. testified that she had the opportunity to leave the house when he fell asleep and she did not leave.

When the sufficiency of evidence is challenged in a criminal case, our court reviews all of the evidence in the light most favorable to the State, and the conviction(s) will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

17

In order to prove, beyond a reasonable doubt, the crime of rape, the State needed to show that Hall "[k]nowingly engag[ed] in sexual intercourse with a victim who does not consent to the sexual intercourse . . . [w]hen the victim is overcome by force or fear." K.S.A. 2016 Supp. 21-5503(a)(1)(A). To prove Hall committed aggravated kidnapping, the State needed to establish that Hall accomplished a "taking or confining of any person . . . by force, threat or deception, with the intent to hold such person . . . to inflict bodily injury or to terrorize the victim or another" and "bodily harm [was] inflicted upon the person kidnapped." K.S.A. 2016 Supp. 21-5408(a)(3), (b). As for aggravated criminal sodomy, the State needed to prove that Hall engaged in "sodomy with a victim who does not consent to the sodomy or caus[ed] a victim, without the victim's consent, to engage in sodomy with any person . . . [w]hen the victim is overcome by force or fear." K.S.A. 2016 Supp. 21-5504(b)(3)(A).

Finally, to establish Hall's guilt for the crime of aggravated battery, the State needed to show that Hall knowingly caused "bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2016 Supp. 21-5413(b)(1)(B). Although not subject to precise definition, "[t]he word 'great' distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor, or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery. [Citation omitted.]" *State v. Johnson*, 46 Kan. App. 2d 870, 881, 265 P.3d 585 (2011).

We have reviewed the testimony and exhibits presented at trial which are summarized in the Factual and Procedural Background section of this opinion. We find that when viewed in the light most favorable to the prosecution, there is substantial competent evidence upon which a rational factfinder could have found Hall guilty, beyond a reasonable doubt, of rape, aggravated kidnapping, aggravated criminal sodomy, and aggravated battery. It is apparent that after considering the live witness testimony, exhibits, and transcript of Wilkerson's testimony, the district judge weighed the evidence

18

and found the State's presentation to be credible and sufficient to establish Hall's guilt for these crimes. It is not proper for this court to reweigh the evidence, resolve evidentiary conflicts, or question the trier of fact's credibility determinations on appeal. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

## THE ADMISSIBILITY OF HALL'S STATEMENTS

On the morning of trial, defense counsel objected to the State's proposed procedure to incorporate a *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), hearing as part of the trial rather than immediately before trial. In response, the district judge stated:

> "Well, let me just say, Mr. Wagle, I did receive yesterday a copy of a transcription of the taped interview of Mr. Hall that's been redacted. The part that I received contains only the preliminary aspects where personal information is being asked, and that sort of thing, and the *Miranda* warning is being administered. I have had the opportunity to review that video. And with regard to the *Jackson v. Denno* issue, the question is whether or not there was a waiver that was voluntarily offered after he was fully informed of his rights. And the only thing that I have not seen is the actual *Miranda* document that's been signed. Upon being provided that document, or a copy of it, I can then make a ruling on the *Jackson v. Denno* issue right now."

The prosecutor moved to admit State's Exhibit M-1 (the redacted video recording of Hall's interview through the administration of his *Miranda* rights), M-2 (the redacted *Denno* transcript of the interview through the administration of Hall's *Miranda* rights), and M-3 (a copy of the *Miranda* waiver form) into evidence for purposes of the *Jackson v. Denno* hearing. After admitting the exhibits into evidence, with no objection from Hall, the district court found Hall's statements made to Sergeant Oldridge were voluntary.

19

Later, when the prosecutor offered the entire video recording of Hall's interview into evidence during trial, Wagle objected because "under the *Jackson v. Denno* ruling of the Court, . . . this would be inappropriate for the Court to review." Wagle also lodged a similar objection to the admission of a transcript of the entire video recording "on the basis of the Court's previous ruling." The district judge overruled both objections.

After Hall's convictions, Wagle filed a motion for new trial alleging, in part, that the district court erred when it determined that Hall's statements to Sergeant Oldridge were voluntary. The district court, however, denied Hall's motion for new trial, finding that he had failed to present a valid reason for overruling its previous ruling.

On appeal, Hall challenges the sufficiency of the district court's findings regarding the voluntariness of his statements and the manner in which the court conducted the *Jackson v. Denno* hearing. Specifically, Hall contends the district court "failed to make sufficient findings and failed to make a full consideration of the issues raised concerning [his] statements to police."

We review a district court's voluntariness determination under a bifurcated standard, *i.e.*, we review the factual underpinnings of the decision under a substantial competent evidence standard and the district court's ultimate legal conclusion drawn from those facts is reviewed de novo. *State v. Betancourt*, 301 Kan. 282, 290, 342 P.3d 916 (2015). When undertaking this task, we do not reweigh the evidence, assess witness credibility, or resolve conflicts in the evidence. 301 Kan. at 290.

"The Fifth Amendment to the United States Constitution guarantees the right against self-incrimination, including the right to have a lawyer present during custodial interrogation and the right to remain silent." *State v. Walker*, 276 Kan. 939, 944, 80 P.3d 1132 (2003). While law enforcement may conduct a custodial interrogation if the defendant has voluntarily waived his or her *Miranda* rights, if the circumstances show

20

that the defendant's confession/admissions were made involuntarily under physical or mental duress or in exchange for the promise of a substantial benefit, the government is prohibited from using the statements against the defendant in any criminal prosecution. See *Davis v. United State*s, 512 U.S. 452, 458, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994); *State v. Fernandez-Torres*, 50 Kan. App. 2d 1069, 1076-77, 337 P.3d 691 (2014).

When a defendant challenges his or her inculpatory statements as involuntarily given, it is the State's burden to prove the statements' voluntariness by a preponderance of the evidence. *State v. Walker*, 304 Kan. 441, 449, 372 P.3d 1147 (2016); *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015); *Betancourt*, 301 Kan. at 290; see K.S.A. 22-3215(4). In determining the voluntariness of a post-*Miranda* statement, courts consider the totality of the circumstances surrounding the confession, without regard to the statements' truth or falsity. See *Dern*, 303 Kan. at 392; *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015); *Fernandez-Torres*, 50 Kan. App. 2d at 1077.

The factors to be considered in assessing voluntariness include, but are not limited to, the following: (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *Dern*, 303 Kan. at 392; *Woods*, 301 Kan. at 867.

The crux of Hall's appellate argument is his contention that the district court failed to conduct a "true [*Jackson v. Denno*] hearing" and neglected to provide adequate findings of fact and conclusions of law regarding the voluntariness factors. Upon our review, we find no error.

First, given that the district court conducted the bench trial, whether the hearing occurred immediately prior to trial or during trial seems of little consequence. The district

21

court was obviously capable of evaluating the voluntariness of Hall's statements at any time during the litigation leading up to the court's verdict. Moreover, although what Hall considers a true *Jackson v. Denno* hearing may include testimony and evidence from the defense, Hall had the opportunity but did not present any such evidence.

Second, while the district court did not explicitly state which of the voluntariness factors were important to its decision, Hall neglected to object to the adequacy of the district court's findings. Supreme Court Rule 165(a) (2017 Kan. S. Ct. R. 214) requires a district court to provide adequate findings of fact and conclusions of law explaining the court's decision on contested matters. But a party must object to inadequate findings and conclusions to preserve an issue for appeal because such objections necessarily give the district court an opportunity to correct any inadequacies. See *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). When no objection is made, we may presume the district court found all facts necessary to support its judgment. *Dern*, 303 Kan. at 394.

Where the record does not support such a presumption and the lack of specific findings precludes meaningful review, an appellate court may consider a remand. See *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). There is, however, no need for a remand of this issue. The record contains the evidence the district court reviewed and neither party disputes the facts material to the district court's decision; therefore, we are essentially in the same position as the district court with regard to assessing the voluntariness of Hall's statements to Sergeant Oldridge.

Nevertheless, other than a passing reference to Wagle's remarks at the hearing on the motion for new trial, Hall did not brief the issue of whether his statements were voluntary. Again, issues not briefed by the appellant and points raised incidentally in a brief and not argued therein are generally deemed waived or abandoned. *Williams*, 303 Kan. at 758.

22

Even if Hall had properly briefed this issue, his argument would still fail because, as the State asserts, the "circumstances of [Hall]'s interview do not compel the conclusion that [his] statements were involuntary." Initially, while the State played the entire video recording of Hall's interview during his bench trial, it appears the district judge only viewed a recording of the events preceding and including the administration of Hall's *Miranda* rights for purposes of the *Jackson v. Denno* hearing. The State added the video recording admitted at the *Jackson v. Denno* hearing to the record on appeal, but the recording of the *entire* interview, which was played at trial, is absent from the record. As a result, the inculpatory statements Hall made during the interview remain unknown, and we are unable to assess whether Hall's statements ceased to be voluntary sometime after he waived his *Miranda* rights. Hall, as the party claiming error, has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, we presume the action of the district court was proper. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

Based on the evidence considered by the district judge at the *Jackson v. Denno* hearing, we find that Hall's decision to speak with Sergeant Oldridge was voluntary. First, the officer reviewed Hall's *Miranda* rights with him, and Hall said that he understood those rights and wished to waive them. Hall then signed the *Miranda* waiver form, and on the form, he marked "Yes" to the following: (1) "I have read this statement of my rights and I understand what my rights are" and (2) "Having these rights in mind do you wish to talk to us now?"

Second, although the video and transcript of Hall's interview indicate that he was angry about the situation in which he found himself, it does not appear that his mental condition was impaired such that he could not voluntarily and understandingly waive his *Miranda* rights because he was able to communicate with Sergeant Oldridge and provide clear responses to her questions.

23

Third, Hall was about 44 years of age and had the wherewithal to be only 20 days from graduating from the Old Town Barber College. Fourth, Hall denied recently consuming any alcohol or drugs or having sustained a recent head injury which could have kept him from making decisions or understanding Sergeant Oldridge's questions. Fifth, Sergeant Oldridge did not speak to Hall in a coercive or overly aggressive manner.

Finally, while it is unclear how long the interview lasted, Hall sat in the interview room, handcuffed to the table, for about 8 minutes; then a police department employee asked him some basic informational questions; and 40 minutes thereafter, Sergeant Oldridge entered the room. The timing of these events does not appear to be particularly coercive or unreasonable.

Additionally, the video recording and partial transcript belie Hall's claim that Sergeant Oldridge tricked him into waiving his *Miranda* rights by leading him to believe that he was only facing charges of domestic violence. In fact, on four separate occasions, Hall was either told about the specific felony charges or he indicated his understanding of the charges.

In conclusion, we hold that the district court did not err when it found Hall's statements to Sergeant Oldridge were admissible because the totality of the circumstances demonstrates that his statements were voluntarily made.

THE RAPE SHIELD STATUTE

Five days prior to the bench trial, Hall filed a pro se motion to pierce the rape shield statute, K.S.A. 2016 Supp. 21-5502. In the motion Hall stated that because he and N.F. were involved in a romantic relationship, he should be allowed to claim an exception to the rape shield statute "so that the determination of where the truth lies

24

maybe [*sic*] examined to ensure each parties['] version of the truth of the matter at hand is fully understood. . . ."

On the morning of trial, Wagle sought to adopt Hall's pro se motion, and he orally moved for an order authorizing him to question N.F. as to her "prior sexual activity" with Hall, specifically, whether the two of them had "ever had rough sex before." Judge Burgess denied the motion because K.S.A. 2016 Supp. 21-5502(b) "requires a written motion at least seven days before the commencement of the proceedings[, and n]either of those requirements ha[d] been satisfied."

After Hall's convictions, Wagle filed a motion for new trial, alleging, in part, that the district court erred when it refused to grant Hall's motion to "pierce the rape shield statute." At the hearing on the motion to dismiss, the district court denied Hall's motion for new trial, finding that Hall had failed to present a valid reason for overruling its prior decision.

On appeal, Hall contends the district court violated his right to a fair trial and compromised his ability to confront the witnesses against him when it denied his request to question N.F. as to her previous sexual conduct. In particular, Hall claims the district court misapplied the statute because he "failed to even consider the statutory provision that the court may waive those requirements."

The district court determined that Hall did not file his motion in a timely manner as required by K.S.A. 2016 Supp. 21-5502(b). Because we have reversed Hall's convictions, and given the procedural basis for the district court's ruling, we question whether this issue will arise on remand. Accordingly, we conclude this issue is moot. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) (Kansas appellate courts generally do not decide moot questions or render advisory opinions.).

25

## CUMULATIVE ERROR

Hall argues that cumulative trial errors deprived him of his right to a fair trial. Because we have reversed Hall's convictions, this issue is moot. See 295 Kan. at 840.

Affirmed in part, dismissed in part, convictions reversed, and case remanded with directions.